ROBERTS v. H. P. NAIL CO.

(Circuit Court, N. D. Ohio, E. D. December 5, 1892.)

No. 4,925.

1. PATENTS FOR INVENTIONS—COMBINATION—CLAIMS.
   In a combination patent it is permissible for the patentee, after claiming the whole machine, to claim the combination of fewer parts than the whole, if this combination of parts is new, even though, taken alone, it will not result in any known useful product. Wells v. Jaques, 5 O. G. 364, followed.

2. SAME—ROD-COILING CONES.
   In letters patent No. 426,067, issued to Henry Roberts for an apparatus designed for coiling small red-hot metal rods as they run rapidly from the rolls, the patentee describes as the preferable form a rotary double cone, consisting of two concentric cones having a space between them, being united by a spiral rib, and terminating in a collar at the apex, through which the rod is received, being afterwards delivered, coiled, at the base. The second, third, and fourth claims cover substantially this double cone, but the first claim covers merely a rotary receiving and coiling cone, "having a channel," which receives the metal at the apex, and delivers it at the base. *Held* that, this latter combination of parts being new, the first claim is not invalid because it covers less than the whole machine.

3. SAME—ANTICIPATION.
   In letters patent No. 444,652, also issued to Henry Roberts, the patentee dispenses with the outer cone, except so much of it as forms the hollow collar. The collar is connected with a single cone by means of pieces extending downward, and widening into longitudinal ribs with lateral flanges running spirally down opposite sides of the cone. Claim 3 reads: "In metal-coiling apparatus, having an exposed outer surface, along which the rod travels, a hollow collar and driving gear, substantially as and for the purposes described." The other two claims include, in addition, the longitudinal rib or ribs with a lateral flange. *Held*, that the third claim was not invalid because it covered less than the whole machine, and was not anticipated by the first Roberts patent, since it has the new feature, "an exposed outer surface."

4. SAME—ANTICIPATION.

The fact that in the prior coiling devices, known as "pipe reels," the rod, in its course through the pipe, described in space a curved plane resembling the surface of a cone, did not render either of the Roberts patents invalid; nor were they anticipated by the Young patent, which had six curved, rotating lay-off pipes, arranged at equal distances around the mouth of the guide tube, and connected together with an outer covering, which gave the coiler the semblance of a cone; since this constituted simply a series of pipe coilers, only one of which was used at a time, the object being to distribute the wear and tear due to the running of the rods through the pipe.

5. SAME.

The mere fact that the pipes of the Young patent may in some sense be said to be channels running down the surface of a cone does not bring them within the language of the first claim of the first Roberts patent, since that claim is for a coiling and receiving cone, having a channel of which the surface of the cone is one side or part, by means of which the rod is received at the apex of the cone and delivered at its base.

6. SAME—PRIOR ART—EVIDENCE.

The mere fact that in rejecting one of the claims of Roberts' original application the patent examiner said "that cones are common things in coiling machines," is no proof that "rotary" coiling cones were before used; and, if any such cones were in fact used, the burden was upon defendant to show it.

7. SAME—INFRINGEMENT.

Claim 1 of the first Roberts patent and claim 3 of the second Roberts patent are infringed by a rotary coiling cone, having two flanged wings extending radially from the surface thereof, and uniting above the apex in a hollow collar, through which the rod is introduced and directed to the surface of the cone, and is taken up by one or the other of the wings, and is coiled beneath the base.

8. SAME.

Such a cone is also an infringement of claim 2 of the second Roberts patent, which covers "a rotary coiling cone, having two longitudinal ribs with lateral flanges, substantially as and for the purposes described."

9. SAME.

Claim 2 of the second Roberts patent is also infringed by the McIlvried patent, which differs from the Roberts machine only in having wider flanged ribs; and infringement is not avoided by simply cutting off the flange, since the necessity therefor is obviated by the widening of the ribs, and by making the angle at which they meet the cone somewhat more acute.

In Equity. Bill by Henry Roberts against the H. P. Nail Company for infringement of patents. Decree for injunction and accounting.

Bakewell & Sons, for complainant.
Hall & Fay, for defendant.

TAFT, Circuit Judge. This is a suit in equity on patents Nos. 426,-067 and 444,652, issued to complainant, Henry Roberts, against the respondent, the H. P. Nail Company, for injunction against further infringement and for damages. The defenses are want of novelty, invalidity of the claims, and noninfringement. The apparatus which is the subject-matter of this controversy, and for which the complainant's patents were issued, is for coiling metal rods, to be subsequently drawn out into metal wire of the required sizes. The metal rods are made from a metal billet, only a few feet in length, of very

considerable thickness, and are brought to the proper size, i. e. about three sixteenths of an inch, by being put through a series of rapidly running rollers, which gradually reduce the thickness and increase the length of the billet into a rod nearly 2,000 feet in length. The speed which the moving rod attains is upwards of 1,500 feet a minute. The metal is red hot during the process of rolling, and when it has been reduced to the right size it becomes exceedingly important to coil it, so that it shall neither kink, snarl, nor twist. As delivered from the last set of rollers, the speed of the rod, its wavy motion, and the ease with which it will bend and twist, owing to its heated condition, make its proper coiling a difficult operation. The coil is allowed to cool, and then the rod is drawn cold through a series of steel dies, which gradually reduce its size to that of the wire required. If the rod is much twisted in a spiral or corkscrew shape, it cannot be drawn through the dies without either breaking the rod or injuring the dies.

In the mode of coiling or reeling the rod in use until a few years ago workmen seized the rod as it came from the last set of rollers, and inserted the end in a reel running at a speed slightly greater than that of the last rollers, so that the loops in the rod, caused by the delay in inserting the end, should be taken up. It is easy to see that with the speed at which the rod runs, the operation would be a difficult one for the workmen, and attended with great danger. It was likely also to result frequently in snarling the rod, and thereby to destroy its value for wire-drawing purposes. To meet the difficulties of this method, a number of devices were patented before the date of Mr. Roberts' application. Of these there were two kinds. One may be known as "pipe coilers" and the others as "reel coilers."

The first class is well illustrated by the Matteson patent. In this device a guide tube, fitting close to the last set of rollers, opposite the point where the rod is delivered, is curved at its other end, so that after receiving the rod it conveys it downward into a delivery tube or lay off, having the form of a compound curve, with the delivery end tapered transversely, and hung in a frame, so as to permit its rotation by belt or cog or other suitable gearing. The lower part of the lay-off or curved pipe travels about the periphery of a drum situated beneath it. As the rod goes through the guide tube it enters the rotating, curved lay off, and is by that delivered and coiled about the circumference of the drum beneath. When the rod is run out, and is all coiled, it is removed by a suitable appliance. The rotating lay-off pipe appears in the Rusbach patent, in the Daniels patent, in the Young patent, in the Lenox patent, and in the Morgan and Daniels patent. The curve of the lay-off pipe varies somewhat in these other patents from that in the Matteson patent, but the operation in coiling the rod is substantially the same.

The reel coiler is seen in the Morgan patent. Here the rod is delivered from the mouth of a fixed pipe into a rotating channel, made up of fingers or posts fixed in a rotating plate and arranged in the form of two concentric circles. The rotating plate and fingers operate exactly as an ordinary reel does, and takes up the rod

as it is delivered, winding or reeling it about the inner circle of fingers. The Sweet patent delivers the rod from a fixed pipe against the inner surface of a revolving cylinder, or the frustrum of a cone, by which the rod is coiled in a circle on the face plate forming the base of the cylinder. The Morgan coiler is an expensive instrument, and, in the opinion of the complainant's expert, likely, in practical use, to break, and need frequent repair. The Sweet coiler has never come into practical use. The pipe coilers, of which, as we have seen, there are quite a number, are in general use, but the objection to them is that the rod, running at the rapid speed of 1,500 feet a minute, with its end frequently split and jagged, and having the wavy motion which the rod in its heated condition usually has, will catch and jam in the narrow confines of the pipe. This results in kinks and snarls in the part of the rod behind the hitch, and in an excessive twisting of that part of the rod in front of the hitch where it is being delivered in the coil from the mouth of the pipe. Such snarls, kinks, and twists, as has been said, interfere seriously with its reduction into wire. To avoid these difficulties, Roberts devised a coiler which consisted of two concentric cones, the outer one prolonged upward into a hollow collar or cylinder, and firmly attached to the interior cone by means of a rib running from its apex to its base. The double cone was rotary on its vertical axis, being journaled in a bearing at its neck or collar in a frame, and provided with an external encircling gear wheel in gear with a pinion rotated by a pulley. The rod was conducted from the last set of rollers by the usual guide tube down into the hollow collar of the double cone, where it was delivered onto the apex and surface of the interior cone. The rapid rotation of the cone soon brought the rib against the running rod, and coiled it below the base of the cone. The outer cone and rib prevented the rod from escaping onto the floor, while the peripheral space, bounded by the inner surface of the outer cone and the outer surface of the inner cone and by the longitudinal rib connecting them, gave ample room for the play of the rod without any danger of kinking, snarling, or excessive twisting.

In the specifications of the first patent Roberts used this language:

"The coiler, B, consists, essentially, of a rotary cone, which receives the metal rod at its smaller end or apex, and distributes it in a coil at the exterior of its periphery at the larger end. For the purpose of more easily governing and controlling the rod in its distribution I prefer to surround this cone with an outer concentric cone or shell, fixed to and rotary with it; but, broadly considered, my invention is not limited thereto, but consists in a rotary distributing or coiling cone, as distinguished from rotary tubes heretofore suggested for use in coiling rods. In this specification I do not use the word 'cone' in its strictest mathematical sense, but use it generically, meaning thereby a tapering body, whether it be truly conical or not."

The claims in the first patent were as follows:

"(1) In apparatus for coiling metal, a rotary receiving and coiling cone, having a channel which receives the metal at the smaller end or apex, and delivers it at its base, in combination with mechanism for rotating the cone, substantially as and for the purposes described. (2) In apparatus for coiling

metal, the rotary double cone, 4, 5, having an intervening spiral rib, 6, substantially as and for the purposes described. (3) In apparatus for coiling metal, a rotary, double, hollow cone, separated by a peripheral space, through which the metal passes, substantially as and for the purposes described. (4) In apparatus for coiling metal, the combination of a rotary, hollow, double cone, a peripheral gear wheel attached thereto, and a driving pinion, substantially as and for the purposes described."

In his second patent, Roberts dispenses with the outer cone, excepting so much of it as forms the hollow collar. This collar is connected with a single cone by means of pieces extending downward, meeting the cone just below the apex, and widening into two longitudinal ribs with lateral flanges. The ribs are on opposite sides of the cone, somewhat spiral in form, and reach down to its base line. The rotating gearing is attached to the hollow collar. In effect, the improvement consists in substituting for the outer cone and the one longitudinal rib of the old machine the two ribs with lateral flanges, performing the same function, in the new. By these means the machine is made simpler, lighter, less expensive, and more easily rotated, without impairing its efficiency. In addition, the rod, after it leaves the guide tube, is visible and accessible,—a feature said to be an advantage in case of a faulty operation of the rollers upon the rod. The claims of the second patent are as follows:

"(1) In metal-coiling apparatus, a rotary coiling cone, having a longitudinal rib with a lateral flange, substantially as and for the purposes described. (2) In metal-coiling apparatus, a rotary coiling cone, having two longitudinal ribs with lateral flanges, substantially as and for the purposes described. (3) In metal-coiling apparatus, a rotary coiling cone, having an exposed outer surface, along which the rod travels, a hollow collar, and driving gear, substantially as and for the purposes described."

Counsel for respondent earnestly object to the validity of the first claim in the first Roberts patent on the ground that is for a single cone, with a channel, receiving the metal at its smaller end, and delivering it at its base, in combination with mechanism for rotating it; while the specifications show only a double cone,—that is, show an inner cone, with a channel made up of a single rib and an outer cone. It is said that it is not permissible for a patentee to make claim for a mechanism wider than anything which is shown to be operative in his specifications. The other claims of the patent are for a double cone, so that it is clear that the first claim is only for a single cone. Nevertheless I do not think that the point is well taken. In a combination patent it is permissible for the patentee, after claiming his whole machine, to claim also the combination of fewer parts than the whole, provided the combination of the parts is new, even if, taken alone, the combination will not result in any known useful product. This is fully established in the decision of Judges McKennan and Nixon in the case of Wells v. Jaques, 5 O. G. 364. In that case the patent was for a combination of elements making up a hat-body machine. The combination embodied a great many different parts, and the patentee made quite a number of claims, of which one only embodied the whole machine. It was objected

that only the claim for the whole machine was valid, because the devices in combination in the other claims could not be employed alone for any useful purpose, and, only being useful when combined into a complete machine, the patent should have been for the unit, and not for the different combinations. To this objection Judge Nixon says:

"I cannot yield assent to that proposition. The separate claims of a patent must be construed in reference to the specifications; and, if the specifications point out the arrangements to be made, or the methods to be adopted, in connection with other instrumentalities which the inventor may not claim as new, in order to render his invention practically useful, the test to be applied is not whether the claim alone will produce a useful result, but whether it will do so supplemented by and in connection with such designated devices and instrumentalities."

In 2 Rob. Pat. § 530, the principle is stated thus:

"Claims for each subordinate piece of mechanism may be joined with those for the principal machine, though not capable of use in any other known connection."

A little reflection shows that this cannot be otherwise, in view of the strict rule applying against the patentee of a combination, on the question of infringement. The omission by the respondent from the combination of complainant of a single element, whether that be old or new in itself, defeats the claim of infringement. That patentees may properly protect what is really new in the combination, they must therefore be given the opportunity to select out a part or parts which are new, less than the whole working machine, and by their claims warn the public against the use of them in any other combination to accomplish the same general result as that for which they were used by the patentee in his complete machine.

Now, in the first Roberts patent, if it was new (and that I shall consider later) to use a rotary receiving and coiling cone, in connection with a channel, to coil these red-hot rods, I do not see why the patentee might not secure to himself the exclusive use of such a device without regard to the particular form of channel required to retain the rod upon the surface of the cone. The patentee has suggested one kind of practicable channel, and has demonstrated the usefulness of the inner cone for receiving and coiling purposes. If any one else should devise another kind of channel, in which the surface of the inner cone is used to receive, deflect, and coil the rod, and the suggestion of such a channel involves patentable invention, then it would be the invention of an improvement on the Roberts' coiler, which would entitle the new inventor to a patent, but he could not use his improvement as a channel on a rotary coiling-cone coiler without a license from Roberts. The fact is that under the case cited above Roberts was entitled to claim in rod coilers a rotary receiving and coiling cone, receiving the rod at its apex, and delivering it at its base, provided always that those parts were new. He has seen fit to narrow his claim by inserting the words, "having a channel." If he could make a broad claim, why may he not narrow it?

Substantially the same objection is made to the validity of the third claim of the second patent. "In metal-coiling apparatus, a rotary coiling cone, having an exposed outer surface, along which the rod travels, a hollow collar, and driving gear, substantially as and for the purposes described." And for the same reasons we think the validity of the claim must be sustained, if the combination was new in coiling machines. It is a claim for a combination of three parts of the four or five parts making up the entire machine. The combination is not anticipated by the Roberts first patent because it has the new feature, not present or suggested in that patent, of an exposed outer surface in the receiving and coiling cone, along which the rod travels. This makes it a patentable improvement on the first Roberts patent.

We now come to the question whether the Roberts devices have been anticipated in former coiling machines. It is really not claimed with any confidence that either the Morgan or the Sweet devices are anticipations of the patents in suit, or that they contain suggestions from which Roberts' machines could have been constructed with ordinary mechanical skill. The chief contention is that Roberts' patents embody the principle of the various pipe reels, and particularly that of Young. It is true that in the pipe reels the course of the running rod in space from the point where it enters the lay-off pipe at its collar to the point where it is delivered from the mouth of the pipe may be generally described as in a curved plane, resembling the surface of a cone, whose apex is at the collar of the lay-off pipe, and the circumference of whose base is described by the mouth of the pipe; the result being a coil of the rod in a circle, the center of which is immediately under the collar of the lay-off pipe and the apex of the imaginary cone. It is also true that the rod in the Roberts machine travels in the plane of the surface of a cone from the collar where it enters the coiler to the point where it is delivered, and that it is delivered at the base in a circle the center of which is immediately under the collar and the apex of the cone. But there is no other similarity. In the complainant's device there is a real, substantial cone. In the pipe coiler, the conical surface is imaginary, the actual contact of the rod being with the pipe. This difference is substantial. It is self-evident, and the expert testimony shows it to be the result in practice, that a rod, running as rapidly as 1,500 feet a minute, with its end frequently roughened and jagged, with the wavy motion which the rod in its red-hot condition usually has, is liable to scrape and jam and kink in the pipe, and will twist excessively in the coil by reason thereof. In the complainant's device the rod has the whole half surface of the cone to play upon, and it is only confined by the channel made by the surface of the cone and the rib, which the rotation of the cone brings the rod up against. In the complainant's device the receiving and coiling are done by the surface of the cone and the rib. In the pipe coilers the receiving and coiling are done by a pipe. Only in the most general sense can the two be said to operate in the same way. The use of the surface of the cone with the rib

instead of the pipe for coiling is a very ingenious substitution of a device for accomplishing the same result without the difficulties which are present in the operation of all the pipe reels.

In the Young patent, so much relied on, instead of one curved rotating lay-off pipe, through which the rod is carried, there are six, arranged at equal distances around the mouth of the guide tube leading from the rollers, in such a manner that their lower mouths are in the circumference of a circle above and about the coiling drum, and their upper mouths are so adjusted that either one may be made continuous with the guide tube, and carry the rod down to be laid off, as in the Matteson coiler, already described. Only one of these six pipes can be used at a time. The advantage in the six is in preventing the wear upon one pipe, which is found to be great in all the devices where single lay-off pipes are used. By changing the guide tube from one to another of these rotating lay-offs, the wear and tear are reduced one sixth on each pipe. Moreover, the other five pipes act as a balance in the rotation of the machine, so as to make it steadier. The patentee, in order to secure firmness, has connected together these six pipes, and covered them, so that the outside of the coiler has the appearance of a cone, and, when the pipes rotate, the cone, of course, rotates. Here is said to be a rotating and coiling cone, with a channel which receives the rod at its apex, and delivers it at its base,—a complete anticipation of the complainant's device and his first claim. The resemblance between the Young patent and the complainant's is only in form. The Young patent is purely a pipe coiler. The mere accident that six pipes, incorporated for relay purposes, should be inclosed in a conical covering, does not make the machine any more like the complainant's device than if there were but one pipe, and that not covered at all. The surface of the cone is not used to receive, deflect, and deliver the rod. There is no rib which catches the rod and coils it on the periphery of the base of the cone. The rod is still confined to the pipe, and does not run upon, and is not supported by, the surface of the cone in any other than the imaginary sense in which it may be said that the pipe itself, describing a conical surface in its rotation, is such a surface. The objections to the use of the curved lay off or pipe are the same in the Young as, in the Matteson patent, and the advantage over the Young patent, found in the complainant's patent, is the same as over all kindred devices.

A somewhat refined argument is made by counsel for respondent to support the claim that the Young device is an anticipation of the Roberts first machine, based on the language of the first claim. It is said that the pipes of the Young patent are channels running down the surface of a cone, and that, therefore, the Young patent is plainly a rotating, receiving, and coiling cone, having a channel, receiving the rod at its apex, and delivering it at its base. If the complainant's machine has in it something new, not suggested by anything known, and a claim has been made wide enough to cover the discovery and something more which was known, it is the duty of the court to so construe the claim, if possible, as to include only the new

and exclude the old. If it cannot, the claim is void. There is not the slightest difficulty in construing the first claim of the Roberts patent so as not to include the Young device. To begin with, the Young device is not in any proper or substantial sense a rotary receiving and coiling cone at all. It is a pipe which receives and coils, not a cone or a conical surface. Construing the first claim in connection with the specifications, its meaning cannot be misunderstood. It is for a coiling and receiving cone, having a channel of which the surface of the cone is one side or a part, by means of which the rod is received at the apex of the cone, and delivered at its base. The whole point of the invention is in the use of the surface of the cone to receive and deflect the rod, and in the channel which guides the rod ultimately to the base the conical surface is an important factor.

Counsel for respondent contends that rotating cones are old for coiling purposes, and refers to the statement of a patent-office examiner in rejecting the original claim made by Roberts under this first patent as proof of it. The original claim was as follows:

"In apparatus for coiling metal, a rotary cone, which receives the metal at the smaller end, or apex, and delivers it at its base, substantially as and for the purposes described."

To this the examiner replied:

"Claim one is objected to because it does not appear to point out any invention in view of the fact that cones are common things in coiling machines, and also because no particular reference is made to what application shows and describes."

—Whereupon the claim was amended and allowed, as we have seen above. The examiner does not say that rotary cones are common in coiling machines, but only that cones are so. He does not say how such cones were used, or whether their operation was like that of the complainant. On the contrary, the fact that the first claim was allowed in this modified form is the prima facie evidence that there had been no rotary cones used as the complainant used them in his coiling machine. If there were any coiling machines having a rotary cone, the surface of which was used to receive, deflect, and, in connection with the channel, to coil wire, rope, or other material, counsel should have introduced evidence of the existence of such machines. The court cannot assume it from the language of the patent-office examiner. I have no difficulty whatever in finding on the evidence adduced that the defense of want of novelty against the complainant's patents is not made out. Mr. Roberts' invention is a distinct step in the art.

What has been said on the question of novelty had application to the first patent. The second patent was, as we have found, an improvement on the first. It was charged in the answer that this second patent was really not an invention of Roberts, but that he surreptitiously obtained knowledge of the device from one McIlvried, who was its real discoverer. This charge was withdrawn in open court, and needs no notice. The validity of both patents is clear.

Upon the question of infringement there is no difficulty. The defendant uses a cone with two wings extending radially from the

surface of the cone, and united above its apex in a hollow collar, through which, from the guide tube, the rod is introduced and directed to the surface of the cone at its apex, and is taken up by one or the other of the wings as the cone and wings rotate, and is coiled beneath the base. The rotating machinery is applied at the hollow collar. If I am correct in holding valid the first claim of Roberts' first patent and the third claim of his second patent, the language of both these claims exactly describes what is found in respondent's coiler. But even suppose that I am wrong with respect to the claims mentioned, respondent's machine is a clear infringement of the second claim of Roberts' second patent, to wit:

"In metal-coiling apparatus, a rotary coiling cone, having two longitudinal ribs with lateral flanges, substantially as and for the purposes described."

Respondent, in his answer, set up a license to use the machine which he was using, from McIlvried and Chisholm, the owners of the McIlvried patent. The McIlvried patent, so far as it relates to the device already described, is clearly an infringement of the second claim above. Counsel for respondent practically admits that it is. The evidence leaves little doubt that McIlvried saw the first Roberts device in operation, and the model of the second device, before he made his application, and that he simply copied the improvement in the second machine. The device of the McIlvried patent has ribs wider than the Roberts machine, but it has the lateral flanges of that device on the exterior edge of these ribs. During the pendency of the suit the respondent cut off the lateral flanges, and now the court is vigorously pressed with the argument that, in the absence of the flanges, though the device is the same in every other respect, there is no infringement. The point has no merit. The wings of the McIlvried coiler correspond exactly to the ribs of the Roberts second patent. The necessity for lateral flanges in the McIlvried machine has been obviated by widening the ribs into wings, and by making the angle at which they meet the surface of the cone somewhat more acute. The widening of the wings and the lessening of the angle are purely mechanical equivalents of the lateral flanges of the longitudinal ribs in the Roberts second patent, and would suggest themselves to a mechanic or any other person at all familiar with the operation of the machine. It follows, therefore, that in any view the machine of the respondent is an infringement of both the Roberts patents.

The finding will be against the respondent, sustaining the validity of the patents, and finding that the respondent has infringed them, with a decree for perpetual injunction, and with the usual reference to a master for an accounting.