## GALT et al. v. PARLIN & ORENDORF CO.

(Circuit Court of Appeals, Seventh Circuit. February 9, 1894.)

### No. 95.

PATENTS FOR INVENTIONS—NOVELTY—WHEEL HARROWS.

The fifth, sixth, and seventh claims of reissued letters patent No. 8,765, granted June 24, 1879, to Jay S. Corbin for an improvement in wheel harrows, consisting of the combination with a gang of rotating harrow disks of a lever for setting the same, are void for want of novelty, the improvement being merely a change in the location of the lever previously used. 52 Fed. 749, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Southern Division.

Bill by Thomas A. Galt and others against the Parlin & Orendorf Company to restrain the alleged infringement of a patent. Defendant obtained a decree. 52 Fed. 749. Complainants appeal.

The case is well stated in the following opinion of Judge Blodgett, delivered in the court below, and reported in 52 Fed. 749:

This is a bill in equity for an injunction and accounting by reason of the alleged infringement of patent No. 197,545, granted November 27, 1877, to Jay S. Corbin, for an improvement in wheel harrows, reissued June 24, 1879, No. 8,765. The inventor says in his specifications: "My invention relates to the improvement of that class of machines known as 'wheel' or 'disk' harrows, in which the disks are arranged in two or more gangs upon horizontal rotating shafts; and has for its object the construction of the machine in such manner as to adapt the gangs to follow the even surface of the ground; also, to provide for the easy and rapid setting of the gangs at any desired angle to the line of draught while in motion or at rest, and holding the same when set. * * * Also, to provide a ready means of setting the gangs at different angles relative to the line of draught." The reissued patent has eleven claims, but infringement is charged only of the fifth, sixth, and seventh. The original claims relating to the part of the harrow in controversy are: "(5) The combination with a gang of rotating harrow disks of a lever connected to the gangs for setting the same at an angle with the line of the draught, substantially as described. (6) The combination with a gang of rotating harrow disks of a lever for setting the same at an angle with the line of draught, and a rack and dog for holding the disks in position when set, substantially as described." The fifth, sixth, and seventh claims of the reissue are: "(5) The combination, in a wheel harrow, of the following elements, viz.: a draft frame or a draft plank projecting laterally from the tongue, disk gangs pivoted to the draft frame or draft plank, and a set lever mounted on the tongue and connected with the disk gangs between the points at which said gangs are connected with the draft frame or draft plank, substantially as set forth. (6) The combination, substantially as set forth, in a wheel harrow, of the following elements, viz.: a tongue, a draft frame or draft plank, a lever mounted on the tongue, and rods connected with the levers and the metal bearings which support the inner ends of the disk gangs. (7) The combination, substantially as set forth, in a wheel harrow, of the following elements, viz.: a tongue, a draft plank or draft frame projecting laterally from the tongue, disk gangs pivoted to the draft plank or frame, a lever mounted on the tongue connected with the inner end of the disk gangs, and a rack and dog for holding the disks in proper position when set." It will be seen from these claims that the only controversy in the case is over what is called in the specifications the "set lever," by which the angle at which the disks shall cut the ground is regulated. This lever consists of a vertical arm pivoted to the tongue forward of the driver's seat, the lower end of which extends below the tongue, and from which two rods extend, one to the inner end of each of the gang shafts or axles, so that by the movement of the lower end of this lever forward or backward the axle of the gangs is regulated. There is also upon the top of the tongue a rack or sector, with a dog working in it, to hold the gangs at the required angle. The defenses relied upon are want of novelty in this lever device, and noninfringement. The proof shows that this patentee is only an improver, and a late improver at that, of this class of agricultural implements; that in September, 1859, a patent was issued to S. G. Randall for a disk harrow embodying all the elements of complainant's machine, except that no set lever for changing the angle of the gangs is shown in the patent. The proof, however, abundantly shows that, in constructing his harrows in accordance with his patent, Randall had a lever for adjusting the angle of the disk gangs which, although operating substantially in the same way and performing the same work as that done by the complainant's lever, was not mounted upon the tongue or frame of the machine, but was so placed that it must be operated by a person standing or walking behind the machine. There is also in proof a patent granted to E. C. Winters, in May,

1875, on a revolving cultivator, which is a machine analogous in its use to that of the complainant, in which a set lever is mounted on the tongue as shown, which operates to change the running depths of the spades, or cutters, which are shown in that device. In several other machines referred to in the testimony the regulation of the angles of the disk gangs by means of rods and levers is shown. So far as the terms of the claims on which infringement is charged in this patent are concerned, they are, it seems to me, completely met by the old Randall lever of 1863, applied to the harrow shown in the patent of 1859; that is, Randall had a combination with a gang of rotating harrow disks of a lever connected to the gangs for setting the same at an angle with the line of draught, and its operation was substantially as described, but it was not located in the same place; and undoubtedly it was more convenient to locate this lever, which Randall has introduced into the organization, upon the tongue than it was to locate it where Randall had it, at the rear of his frame; but, as it seems to me, no inventive talent was called into action to apply the lever shown in Winters' patent to the complainant's gang. It seems to me that this patent is but for an aggregation of parts. The idea of changing the angle of the disk frames is Randall's; the idea of doing that by means of a lever is Randall's. The lever used by Randall is substantially, in its mode of operation and effect, the same as that used by complainant; and simply to relocate that lever, or place upon the tongue of complainant's machine the Winters lever, does not seem to have required any inventive talent. It was merely a mechanical act to transfer Winters' lever to the tongue of complainant's machine. That it was an improvement upon the machine may be admitted, but that it was such an improvement as will sustain the patent I do not think, because this class of machines, according to the proofs, has always been operated, so far as the angles of the disk harrows are concerned, to a greater or less extent by means of a lever. Such a lever for shifting or changing the seed shoes and hoes of the seeding machine from a straight to a zigzag line is shown in the Davis patent of 1868; and the same device is also shown in the Schmidt patent of February, 1869, on a seeding drill, and in the Manny mower patent of 1871 for tilting and lifting the cutter apparatus. In fact, it may, perhaps, be said to be a part of common knowledge at the date of the patent that levers of this character for the purpose of regulating the movements of plows, cultivators, seeders, and harrows, were in constant use; and all this patentee has done is to take one of those old levers and mount it on his tongue for the purpose of adjusting the angle of his disk gang, instead of placing the lever where Randall placed it. It performs the same function, and no other, when placed on the frame of the machine as it did in Randall's old machine. If Randall's lever had been patented, it is quite clear the Corbin lever would have been an infringement. If Randall had attached a rod to his lever and extended the same forward to the driver's seat, so that the angle of the disk gang could be controlled from the driver's seat, he would have had a device operating upon the same principle and producing the same result as is done by the complainant's lever; and no one, I think, would contend that it would have been patentable to so attach a rod to the Randall lever, and hold it by any common locking device. I am, therefore, clearly of the opinion that this patent must be held void for want of novelty.

### The following is the argument made here in support of the patent:

While invention is necessary only in the means, it involves or contains also the conception in the mind of the inventor that the result can be accomplished by such means. "In all discoveries, of course, there are two things,—there is an object to be achieved, and a means of achieving that object. No invention is required as to the object. The invention may be in the means for effecting the object, whether [the latter be] old or new." Adie v. Clark, 3 Ch. Div. 135. Wood, V. C. It is not a fair presentation of the problem to consider only whether a mechanic could take an ordinary lever and place it as Corbin has placed it, in connection with the disk gangs at their inner ends, without any quality of invention being involved in the transaction. But, as stated in Adie v. Clark, before cited: "In all discoveries, of course, there

are two things,—there is an object to be achieved, and a means of achieving that object." It might have occurred to a mechanic that a lever could be placed as Corbin placed it, but the mechanic might not have believed in advance that when thus placed the lever would accomplish the result, and have abandoned the idea. In none of the earlier constructions of the disk harrows, whether shown in patents or by evidence of actual use, was there any means of adjustability presented which were capable of adjusting the gangs while the harrow was in motion and the draft of the team exerted thereon. Corbin, therefore, had to determine, first, that adjustability as against the draft of the team could be effected while the harrow was in motion; and, second, he had to devise means for accomplishing the result under the conditions named. It is obvious, as well as established by proof, that there is an incalculable advantage in having means for adjusting the d sk gangs while the machine is in motion, and without intermitting the draft of the team. And the result is certainly different, as the depth of cut effected by any special angle can be determined only by experiment; that is, wh'le the machine is moving. Corbin's construction afforded not only the advantage of adjustability without loss of time, but it also afforded means of determining the adjustability required, by exhibiting, in actual experience, what degree of entrance into the surface of the earth any spec'al point of adjustability produced. Therefore, Corbin produced a new result in this, that he not only effected an adjustability, but concurrently therewith illustrated the depth of cut resulting therefrom. * * * It does not meet the case, therefore, to contend that other means of adjusting the gangs while the machine was stationary had been previously employed; neither does it meet the case to insist that a lever as a means of adjustment of other machines, under other conditions, had been previously employed.

C. K. Offield and John G. Manahan, for appellants.

Bond, Adams, Pickard & Jackson, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge (after stating the facts). The bearing of the prior art upon the question of novelty and invention in Corbin's combination may be illustrated by supposing two of the older machines to be employed side by side,—the wheel harrow of Bayless, without a lever, and adjustable only by means of a movable bolt, and the revolving spader or cultivator of Winters, with a lever mounted on the tongue, ready for the hand of the driver in his seat. In that situation the advantage of one driver over the other in respect to the easy and ready control of his machine would be clear enough, but not more obvious than the means of correcting the inequality. So manifest, indeed, is the impossibility of finding invention in the mere fact of a lever mounted on the tongue of a wheel harrow to be used in controlling the alignment of the disk gangs that it is not insisted upon; but it is now contended that it is not a fair presentation of the problem to consider only whether a mechanic could place an ordinary lever, as Corbin placed it, in connection with the disk gangs; that Corbin, as he was compelled to do, went further, and determined first the possibility, as against the draft of the team, of adjusting the gangs while the machine was in motion, then the means of doing it, and thereby achieved the new result that, concurrently with the making of adjustments of the gangs in motion, the depth of the resulting cut is illustrated. This argument admits by implication that it would

have required no invention to introduce a lever into the Bayless harrow if intended only for the obvious advantage of enabling the driver, without leaving his seat, to adjust the gangs when not in motion; but if done for the purpose of making adjustments when the machine should be in motion, then, it is insisted, there was invention. But, the possibility of multiplying power by means of the lever being perfectly well understood, it is idle to contend that Corbin did more than an ordinary mechanic could have done when he determined that by means of a lever properly adjusted, and within the limits of the movement of its short arm, the disk gangs could be shifted at pleasure either when the machine was at rest or when it was in motion. In respect to the alleged new result, it is to be observed that, if Corbin apprehended what is now asserted, he did not deem it worthy of mention in his patent. As stated in the specification, his object in this respect was "to provide for the easy and rapid setting of the gangs at any desired angle to the line of draft while in motion or at rest;" and of the lever itself it is said "that, when its upper end is carried forward to its limit, the gangs will be in a straight line for removal to and from the field; that when it is set perpendicularly the gangs are ready for pulverizing soft soil; and when it is set at its backward limit they are ready for the harder clay soil." It need not be supposed, however, that he had no conception of the advantage, when practicable, of making such adjustments when the harrow or cultivator should be in motion rather than when it was at rest. There was common knowledge in that direction. Every intelligent plowman who, in order to regulate the depth of his plowing or the width of his furrow, had stopped his team to shift the whiffletree to a higher or lower notch of the clevis, or to adjust the front end of the clevis to one side or the other of the middle line of the plow beam, had perceived that the exact adjustments needed would be more readily attained if they could be made gradually while the plow was in motion; and more modern implements, in which levers are shown to have been employed for the purpose of controlling and adjusting their movements, have long afforded illustration of results corresponding in some measure to that now claimed to be new. If it was a part of Corbin's conception that the desired adjustments could be illustrated and more readily effected in the way stated, it was no more than men of ordinary experience in such matters, or of ordinary knowledge of the laws of mechanics, would have apprehended as the probable, and indeed necessary, result.

But the entire argument for the appellants proceeds on the erroneous assumption that a machine or mechanical combination which, in itself contains no novelty amounting to invention may be patentable because of some new use or result which is accomplished; a proposition which, as we have seen, leads to the inadmissible conclusion that for one use or purpose a device may be public property and for another use may be the subject of a patent. On the contrary, it is well settled, we suppose, "that a patent for a machine covers its use for all purposes, whether anticipated by the patentee or not, and that the functions or methods of operation of me-

chanical devices are not patentable." Appleton Manuf'g Co. v. Star Manuf'g Co., 60 Fed. 411. "The invention is in the device, which may have one, two, or more functions, one of great and another of trifling worth; it may be supposed to have a function which it has not; the patent is upon the device, and not upon the functions, real or supposed." Western Electric Co. v. Sperry Electric Co., 7 C. C. A. 164, 58 Fed. 186. "A mistaken description, or even misconception of the operation of a device, which is itself fitly described and claimed, does not vitiate a patent." Temple Pump Co. v. Goss Pump, etc., Manuf'g Co., 7 C. C. A. 174, 58 Fed. 196. By the decision of the supreme court in Collar Co. v. Van Dusen, 23 Wall. 530, 563, "new articles of commerce are not patentable as new manufactures, unless it appears in the given case that the production of the new article involved the exercise of invention or discovery beyond what was necessary to construct the apparatus for its manufacture or production." And by the same principle a machine, apparatus, or mechanical combination, the conception and construction of which involved no invention, cannot be patentable by reason of any new effect, result, or product obtained by its employment. In Fuller v. Yentzer, 94 U. S. 288, it is said: "Patents for a machine will not be sustained if the claim is for a result, the established rule being that the invention, if any, within the meaning of the patent act, consists in the means or apparatus by which the result is obtained, and not merely in the mode of operation, independent of the mechanical devices employed; nor will a patent be held valid for a principle or for an idea, or any other mere abstraction. Burr v. Duryee, 1 Wall. 531." And in Roberts v. Ryer, 91 U. S. 150, 157, is this expression: "It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." To same effect see Stow v. Chicago, 104 U. S. 550; Heald v. Rice, Id. 755; Stimpson v. Woodman, 10 Wall. 117; Tucker v. Spalding, 13 Wall. 453. If, therefore, it be conceded that Corbin was first to mount a lever upon the tongue of a wheel harrow, and that thereby a new result or advantage incident to the operation of the harrow was gained, yet the decree below was right, because, the use of the lever in similar machines for corresponding purposes being familiar, its introduction into Corbin's combination involved no possible measure of invention. The decree of the circuit court should be affirmed, and it is so ordered.