GOSHEN SWEEPER CO. OF GRAND RAPIDS, MICH., v. BISSELL CARPET-SWEEPER CO.

(Circuit Court of Appeals, Sixth Circuit. December 9, 1895.)

No. 319.

1. PATENTS—INFRINGEMENT—CARPET SWEEPERS.

Where a patent for an improvement in carpet sweepers embodies mechanism whereby one end of the brush roller may be pressed downward, so as to sweep more heavily, simply by exerting additional pressure upon the handle, thus accomplishing a new and useful result, an infringement of the patent is not avoided by simply duplicating the mechanism so that the brush roller may be pressed downward at both ends; for this, though an improvement, is a mere change in degree, and a carrying forward of the same idea.

2. SAME—CLAIMS FOR IMPROVEMENTS.

Where a patent was limited to a specific improvement upon a certain part of the mechanism of carpet sweepers of the kind which have the brush roller operated by friction driving wheels, *held,* that it was not necessary that the claims should include, as an element of the combination, the brush roller itself, where the specifications fully described the machine, and pointed out all the elements necessary to construct it; for a patent is addressed to those familiar with the art, and need only point out distinctly the part claimed as new, so as to advise the public as to the extent of the invention.

3. SAME—SUFFICIENCY OF SPECIFICATIONS—DESCRIPTION OF THE FUNCTION OF A PATENT.

The function or principle which the inventor is required to clearly describe is the mode of operation proper to his mechanism or structure, and not the results, effects, or advantages achieved thereby; and if these results, effects, and advantages are the immediate result of the structure and mode of operation, the patentee is entitled to the benefit thereof, whether, at the time of applying for his patent, he understood all of its beneficial results or not.

4. SAME—CARPET SWEEPERS.

The Plumb patent, No. 233,371, for an improvement in carpet sweepers, in which the brush roller is operated by friction driving wheels, and whereby the brush roller may, at the will of the operator, be pressed down, so as to sweep heavy or light. thus giving it a "broom action," construed, and *held* valid and infringed.

On Rehearing.

**5. SAME—LIMITATION OF CLAIMS.**
    Concluding a claim with the words, "when constructed as and for the purpose described," *held* not to limit the patent to one only of the obviously beneficial functions of the combination, where the specifications themselves contained a broader declaration of the purposes and objects of the invention.

**6. APPEAL FROM INTERLOCUTORY ORDER FOR INJUNCTION.**
    On appeal from an interlocutory order granting an injunction after a final hearing, where the circuit court of appeals necessarily considered and expressed an opinion upon the merits, *held* that, upon affirming the decree below, the court was not called upon, at that stage of the case, to determine the effect of this affirmance in case of a subsequent appeal from the final decree; and *held*, that the mandate should simply recite that the court finds no error in the decree awarding the injunction.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This was a bill in equity by the Bissell Carpet-Sweeper Company against the Goshen Sweeper Company, of Grand Rapids, Mich., for alleged infringement of a patent. The circuit court rendered an interlocutory decree granting an injunction, etc., and defendant appeals.

This is a bill for infringement of patent No. 233,371, granted to A. D. Plumb, October 19, 1880, for an improvement in carpet sweepers. The complainant is the Bissell Carpet-Sweeper Company, assignee of Plumb's patent; and the defendant is the Goshen Sweeper Company, of Grand Rapids, who, it is alleged, is making and selling several forms of carpet sweepers which infringe the Plumb patent. The drawings of the patent are a material part of the description of the patent, and are shown below, so far as they affect the second claim:

These drawings show a carpet-sweeper case, in which is carried a rotary brush, one end of which is enlarged, for frictional purposes, and is called the "brush roller." This brush shaft is journaled at each end of the case so as to permit free revolution. One end of the case is carried on two wheels, W, W, and the case is connected to the wheels by two springs, I, I, each of which is fastened at one end to the case at one place only, and at the other end to a flat piece of metal, or to a yoke, in which the wheel is journaled. The sweeper case is thus spring-supported on its wheels. The dustpan is also shown, but, as its construction and operation are not here involved, we omit further description. The specification describes one of the objects of the invention as follows: "Second, to journal the driving wheels to bearings having both vertical and lateral motion, substantially as described." The specification then states: "I, I, represent the springs, so arranged as to produce the friction by pressing the driving wheels against the friction pulley on the brush roller. The spring, I, may be made of one piece of metal, or of more, and the bearing of the wheel may be a flat piece of metal, or may be in the form of a yoke. The spring, I, may also be varied in length. The fastening of the spring to the case of the sweeper in one place only allows the free motion of the wheel, and the center of the brush roller being above the center of the driving wheels enables the operator to increase the friction between the wheels and the brush roller by merely pressing down on

the sweeper. I prefer to attach this spring, I, to the side of the case, and have it pass over on a curve in the form shown in the drawings, but it may be varied in form and construction to suit the operator." The only claim here involved is the second, which is in these words: "The combination of the springs, I, I, driving wheel, W, and sweeper case, the springs being attached at one end to the side of the sweeper case, and supporting the wheel, W, by a journal, on which the wheel, W, revolves, when constructed as and for the purpose described." A construction of this claim was involved in the case of the Bissell Carpet-Sweeper Company against George C. Wetherbee & Co., which was a suit in the circuit court of the United States for the Eastern district of Michigan, for the infringement of this patent, wherein the defenses were substantially the same as those now presented. The infringing devices were substantially identical with those made by appellant company. The cause was tried by Judge Brown (now Mr. Justice Brown), who, in an unpublished opinion, gave to the patent a broad construction, saying: "The idea being, generally, to make the carpet sweeper to correspond as nearly as possible to a broom moved by hand, so that the pressure of the brush upon the carpet may be increased or diminished at pleasure; and it does not remain uniform, as in the ordinary carpet sweeper." That very learned and acute patent judge did not regard Plumb's invention to be limited to a mere frictional device, but found other beneficial functions resulting from the contrivance he had devised, and that he was entitled to all the advantages inherent in his machine. Although the defendants in that case had not used the form of spring proposed by Plumb, nor attached it in the same way, yet he found that they had obtained substantially the same result, by substantially the same means, and were guilty of infringement. That suit was decided in 1888, and for several years seems to have been acquiesced in by carpet-sweeper manufacturers. The present suit was begun in 1893 to restrain infringements substantially similar to those enjoined in the former suit. An application for a preliminary injunction was refused by Judge Severens, of the Western district of Michigan. His reasons are very clearly stated in an opinion found in the record, and substantially states the construction of Plumb's patent now contended for by appellant. After stating the construction given the patent by Judge Brown in the earlier case above referred to, Judge Severens said that it was impossible for him "to find in the specifications and claim of the Plumb patent any foundation for imputing to the inventor the general idea" which seems to have been credited to him by Judge Brown. After some comment upon the presence of certain statements in his specifications, and the absence of others, he continued by saying: "It may be, and I think is, true, that a sweeper constructed on the Plumb patent would have, to some extent, the possibility of such action, but only to a quite limited extent and in a very imperfect manner; for, while it would be operative for that purpose at the end in which the springs are, it would be wholly inoperative at the other. It is inconceivable that the inventor, having the subject before him, should have left the specifications and claims in such a shape, if he had intended the useful result now claimed. The invention claimed by Plumb was one for the securing of constant friction upon, and the consequent motion of, the brush roller, and not for the securing of a varying pressure of the brush roller upon the carpet. It now turns out that by an extension of Plumb's device, and attaching the springs at both ends of the sweeper, this peculiar feature of the broom action is produced. The object and result sought to be obtained is an essential part of the statement of the invention required by the statute to be declared by the inventor. The elements of his invention are to be construed with reference to this. The result must be useful, and he must show how his invention, in practice, produces it. The construction which I have given to the Plumb patent is, as it appears to me, the utmost that can be claimed for it, and it must be thus limited in order to make it sustainable. The use of a spring to hold the axle and wheel in such relation to the brush roller as to produce more or less effective friction was not new, and the earlier Bissell patent, of February 29, 1878, crowds the Plumb invention into close quarters. But it was new, as I have said, to combine the springs and the axle in such a way as to

produce the peculiar operation of the Plumb patent. I am not satisfied that any of the defendant's machines infringe that patent, construed as I think it must be, and it would seem that they do not more invade the proper limits of the latter than did some prior patents relating to the art as it existed when Plumb's application was made. If this be so, there would, of course, be no infringement. Such is the leaning of my judgment upon the subject. It is not necessary to declare a final opinion upon the vital questions in the case, which may be more appropriately reserved until the final hearing, when possibly new reasons may be shown for a different conclusion. For the present my convictions are so strong that I do not feel at liberty to disregard them to the extent to which I should be compelled in awarding an injunction." Upon a final hearing upon pleadings, proof, and exhibits, Judge Severens sustained the patent, and granted a final injunction as prayed. This result he seems to have reached independently of any opinion of his own, and entirely upon the authority of the earlier interpretation of the same patent by Judge Brown. From this decree the Goshen Sweeper Company was allowed an appeal, and has assigned error.

Offield, Towle & Linthicum and Butterfield & Keeney, for appellant.

Taggart, Knappen & Denison (Geo. H. Lathrop, of counsel), for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

After stating the foregoing facts, the opinion of the court was announced by LURTON, Circuit Judge.

If, as contended by the learned counsel for appellant, Plumb's patent is to be construed as only securing an efficient frictional contact between the driving wheels and the brush shaft, then the field for improvement in frictional devices in sweepers was an exceedingly narrow one. This is abundantly shown by numerous prior patents in evidence. That end was the purpose of so many of these earlier devices, and that result had been secured in so many ways, closely approximating the means adopted by Plumb, that his claim, if sustainable at all, is only to be upheld by limiting him to the specific friction device he has described and claimed. If his patent be thus limited, it is doubtful whether any of the sweepers made by the Goshen Company infringe his second claim. On the other hand, it has been most ably argued that the patent was rightly interpreted by Judge Brown, and that it is entitled to so broad a construction "that any carpet sweeper whose case is carried on its wheels, whether two or four, by springs of any form, or by any equivalent elastic, yielding connection, infringes his second claim." When we come to interpret Plumb's patent, and mark out its limits, we are at once confronted with the well-established fact that a carpet sweeper constructed according to his plans, as described in his specifications, possesses, in practical operation, advantages in usefulness which distinguish it in a most decided way from each and all of the alleged anticipatory structures. If we analyze these advantages, we find that in practical use the most obvious improvement in the utility of such machines lies, not in the mere matter of securing a more certain and reliable friction between his driving wheels and the brush roller, but in the adaptability of his mechanism for securing a varying pressure of the brush on the carpet by mere downward

pressure upon the sweeper case, whereby the brush may be made to bear heavily or lightly on the surface to be swept, as the conditions of sweeping seem to require. This adjustability of the brush by downward pressure resembles the action of a broom under hard or light pressure, and has been aptly described by the experts as the "broom-action" advantage of Plumb's mechanism. This, the chief advantage of his improvement in carpet sweepers, is the very feature which it is said he has not pointed out in his specifications in such definite way as to be regarded within the perception of the inventor, or the limits of his patent. That this advantage does not exist to so great a degree in a two-wheeled sweeper, such as shown by Plumb's model sweeper filed with his application, may be conceded. Neither his drawings, specifications, nor claim confine him to a two-wheeled sweeper, though the model filed by him does show that one end of his sweeper rested upon an unyielding metal shoe, so that no amount of pressure would lower that end of the case, or that end of the brush roller carried in the case. Sweepers thus constructed were in fact made and sold by Plumb for several years after his patent. But the decided weight of the evidence is that Plumb's two-wheeled sweepers were exhibited and advertised as sweepers capable of doing hard or light sweeping by downward pressure upon the sweeper case, and that this was called "broom action." The evidence also clearly shows that this feature of his improved sweeper was then regarded with great favor by both the general public and by manufacturers of sweepers, who soon began efforts to obtain the same function in their several devices. The recognition of the existence and utility of this very feature may in truth be said to have, at an early day, revolutionized the carpet-sweeper industry. Though this varying pressure of the brush on the floor was not so beneficial as when both ends of the brush could be lowered, still it is evident, even in that form of sweeper, that downward pressure on the sweeper case would lower the wheel end of the case, and with it the wheel end of the brush roller, so that hard or light sweeping might be done by a part of the brush. The difference between the advantage of sweeping heavily or lightly with the whole of the brush, and with a part only, is, at last, but one of degree. It was a new and useful improvement to be able to vary the pressure on but a part of the brush. The interposition of wheels between the brush roller and end of the case necessarily leaves an unswept margin next a baseboard. Any limitation upon the broom-action function of Plumb's combination in consequence of supporting his case on wheels at one end only was somewhat offset by the fact that the shoe end of the case was better adapted to sweep close to the baseboard. At the date of Plumb's invention this was regarded as giving two-wheeled sweepers an advantage over those carried on four wheels, and they were then much the most popular in the market. Plumb himself was the first to extend his principle to four-wheeled sweepers. If the mechanism contrived by Plumb embodied this broom action adaptability to a degree constituting it a new and useful improvement upon the old structures, and he has sufficiently de-

scribed or pointed out his improvement to meet the requirement of the patent law, then he is not to be deprived of the benefit of this feature because, by a duplication of his wheels, this advantage can be obtained to a greater degree.    Appellant cannot escape liability as an infringer by a mere duplication of Plumb's combination.    That is a mere carrying forward of his idea, by duplicating the parts, doing the same thing in identically the same way, with better results. Roberts v. Ryer, 91 U. S. 150; Belding Manuf'g Co. v. Challenge Corn-Planter Co., 152 U. S. 107, 14 Sup. Ct. 492.

Passing from a consideration of these practical advantages of Plumb's sweeper, as observed in its operation, let us contrast its mechanism with that found in the earlier devices, and see how far that indicates a purpose, and what that design was.    Here we again find very marked mechanical differences.    This difference lies, not in the case, or brush, or wheels, but in the connection between the case and the wheels.    Theretofore the connection between the case and wheels had been rigid.    He made that connection elastic.    He did this by spring-supporting his case on its wheels, so that both the wheels and the case have a vertical motion relatively to each other. The combination of old elements, by which he makes the connection between the case and wheels elastic, constitutes the claim here involved.    That mechanism provides for the rotation of the brush by frictional contact between the brush roller and the driving wheels, which are held in contact with the brush roller by the action of the springs, I, I.    The necessary mechanical effect of these springs, when arranged as described, is to keep the wheels pressed against the pulley wheel of the brush shaft, and, by the friction thus produced, rotate the brush when motion is given the wheels by driving it over the surface to be swept.    Plumb calls attention to the fact that his wheels are allowed "free motion," attributable in part to the fastening of these springs to the case in one place only.    This reference, looking to the whole language of his specification, and construed as one skilled in the mechanics pertaining to carpet sweepers would construe it, does not refer to the mere rotation of the brush roller, but to the "free motion" of the wheels vertically in relation to the case.    The only object conceivable in interposing a spring between the case and wheels, each being connected to the spring, is to permit one to move relatively to the other under pressure, and to restore the moved object to its normal position when the pressure is removed.    This vertical motion gives what is called "broom action," because the brush roller is journaled in the case, and must move with the case.    While the vertical motion of the wheels relatively to the case makes a mechanism adapted to give a varying pressure on the brush, as the necessary law of the structure, the lateral motion of the wheels permits the same spring which supports the case to give frictional contact between the wheels and the brush roller.    That this friction is slightly increased by downward pressure upon the sweeper case is due to the fact that the center of the brush roller is above the center of the driving wheels, so that one effect of this "free motion" of the wheels vertically is

that the descending brush roller crowds the driving wheels further apart, and increases the tension of the springs, I, I. That Plumb makes two independent statements—one in relation to the free motion of his wheels under downward pressure on the sweeper case, and the other concerning an increase of tension in springs, I, I—is made more evident by a comparison of the grammatical construction of his original application with that now forming part of the patent. In his original specification he stated, concerning his spring, that:

"The spring. I, may be made from a single piece of metal. It is attached to the side of the case, as shown, passes over on a curve, and its lower end supports the journal for the driving wheel. This gives the wheel free play, when pressed both horizontal and perpendicular. The pulley, E, being above the center of wheels, W, W, the friction may be increased by pressing the sweeper on the carpet. The spring, I, may be varied in form, and may be constructed of any suitable material."

In the amended specification, now the patent, he stated the second object of his invention to be "to journal the driving wheels to bearings having both vertical and lateral motion." He then said:

"The spring, I, may be made of one piece of metal, or of more; and the bearing of the wheel may be a flat piece of metal, or may be in the form of a yoke. The spring, I, may also be varied in length. The fastening of the spring to the case of the sweeper in one place only allows free motion of the wheel, and the center of the brush roller being above the centers of the driving wheels enables the operator to increase the friction between the wheels and the brush roller by merely pressing down on the sweeper. I prefer to attach this spring, I, to the side of the case, and have it pass over on a curve in the form shown in the drawings, but it may be varied in form and construction to suit the operator."

We quite agree with counsel for appellee in their contention that the quotation above contains two distinct statements, which are substantially the same as the two statements of the original specification above quoted. The first of these statements is substantially that wheels thus journaled in bearings attached to one end of a spring, the other end of which is attached to the side of the sweeper case, would permit the free motion of the wheels when pressure is brought to bear upon the case. The second statement is that, if the center of the brush-roller wheel be above the center of the driving wheels, downward pressure upon the case will crowd the driving wheels further apart by the descent of the brush roller, "and increase the friction between the wheels and the brush roller." We can but regard the specification as clearly explaining that the principle of his invention lies in the fact that his wheels are so journaled as to be capable of both vertical and lateral motion. This principle is an essential to every carpet sweeper having the advantage of "broom action," for broom action is nothing more nor less than the vertical motion of the wheels relative to a case carrying a brush attached to the case. That this claim does not include, as an element, a brush roller, is immaterial. The claim is not for a complete machine, but is limited to a specific improvement of a part of the mechanism of carpet sweepers, "having the brush roller operated by friction driving wheels." The specification fully describes such a machine, and points out all the elements necessary to con-

struct it, and describes how the ingredients of his combination are to be arranged to co-operate with the other well-known parts to make a complete working carpet sweeper. A patent is addressed to those familiar with the art. A new and useful improvement upon an old machine is just as much the subject of patent rights as a new machine. All that the inventor is required to do is to point out distinctly the part he claims as new, so as to advise the public as to the extent of his invention, and what is thereby withdrawn from the public. Parks v. Booth, 102 U. S. 102; Seymour v. Osborne, 11 Wall. 516–541; Roberts v. Nail Co., 53 Fed. 916; 2 Rob. Pat. §§ 530–534. A distinction exists, though not always observed, between a statement of the mechanical functions of a machine, and the beneficial advantages, uses, or results due to that function, and contributing to the success of the invention. The function of a mechanism is its mode of action or operation proper to the structure, and does not ordinarily refer to the results, effects, or advantages of that appointed power of acting in a specific way. The patent statute recognizes this distinction, for it requires that a patentee shall state the "principle" of his machine,—meaning thereby its mode of operation,—and nowhere mentions the beneficial effects, results, uses, or advantages. The principal function of Plumb's spring-supported sweeper case, when arranged to co-operate with the other ingredients of a carpet sweeper, is that, under downward pressure upon the sweeper case, the brush roller is lowered, and thus a varying pressure can be applied to the brush. This capacity of his contrivance he perceived and described when he referred to one of the effects of downward pressure as being an increase of driving friction. The lowered end of the brush is necessarily brought to bear more heavily on the boor. That this would be an advantage in the practical operation of a carpet sweeper would seem obvious. That it is of very great practical utility in the actual operation of his sweeper is established by the evidence, as well as by inspection of the exhibits. That Plumb did not see this advantage resulting from the function of his combination is hardly to be credited. This capacity of adjusting the brush for heavy or light sweeping is so obvious, so directly the appointed action of his mechanism, that whether he has described it specifically is not material. Neither the function, nor its advantage in the success of his sweeper, was a mere obscure property lurking in some accidental corner of the device. It lay upon the very surface, and was continuously in evidence when the sweeper was in operation. This combination resulted in an improved sweeper, capable of a new and beneficial use. He was the first to provide an elastic connection between the wheels and case. This new and most beneficial function is the immediate result of the idea of supporting a sweeper case by a spring connection on its wheels. He is entitled to this beneficial function of his invention, whether he then knew all its beneficial uses or not. McCormick Harvesting Mach. Co. v. C. Aultman & Co., 16 C. C. A. 259, 69 Fed. 371; Roberts v. Ryer, 91 U. S. 150; Brown v. District of Columbia, 130 U. S. 87–103, 9 Sup. Ct. 437; Eames v. Andrews,

122 U. S. 40, 7 Sup. Ct. 1073; Miller v. Manufacturing Co., 151 U. S. 201, 14 Sup. Ct. 310; Stow v. Chicago, 104 U. S. 550; Tucker v. Spalding, 13 Wall. 453; Appleton Manuf'g Co. v. Star Manuf'g Co., 9 C. C. A. 42, 60 Fed. 411; Western Electric Co. v. Sperry Electric Co., 7 C. C. A. 174, 58 Fed. 186; Galt v. Parlin, 9 C. C. A. 49, 60 Fed. 422; Pfeifer v. Dixon-Woods Co., 14 U. S. App. 294, 295, 5 C. C. A. 148, 55 Fed. 390; Thompson Meter Co. v. National Meter Co., 12 C. C. A. 671, 65 Fed. 427. Patents cover the means employed to effect results. Neither an idea nor a function, nor any other abstraction, is patentable in a machine patent. Burr v. Duryee, 1 Wall. 570; Fuller v. Yentzer, 94 U. S. 288. In Eames v. Andrews, cited above, the patent was for an improved method of constructing artesian wells, and was for the process of drawing water from the earth by means of a driven well. Neither the scientific theory nor principle involved, and supposed to constitute the invention, were set forth either in the original or reissued patents. The comment of Judge Blatchford, who had tried the case upon the circuit, in relation to this defect in description, met with the approval of the supreme court. That great patent judge said:

"It may be that the inventor did not know what the scientific principle was, or that, knowing it, he omitted, from accident or design, to set it forth. That does not vitiate the patent. He sets forth the process or mode of operation which ends in the result, and the means for working out the process or mode of operation. The principle referred to is only the why and the wherefore. That is not required to be set forth. Under section 26 of the act of July 8, 1870 (16 Stat. 201), under which this reissue was granted, the specification contains a description of the invention, and of the 'manner and process of making, constructing, compounding, and using it,' in such terms as to enable any person skilled in the art to which it appertains to make, construct, compound, and use it; and, even regarding the case as one of a machine, the specification explains the principles of the machine, within the meaning of that section, although the scientific or physical principle on which the process acts when the pump is used with the air-tight tube is not explained. An inventor may be ignorant of the scientific principle, or he may think he knows it, and yet be uncertain, or he may be confident as to what it is, and others may think differently. All this is immaterial, if, by the specification, the thing to be done is so set forth that it can be reproduced."

Roberts v. Ryer, cited above, affords an interesting illustration of the scope of a patent which actually embodies a capability of use not perceived or described by the patentee. The patent involved was for an improvement in refrigerators, "whereby the whole of the contained air is kept in rotation, purification, desiccation, and refrigeration, with economy of ice." The apartments in the device pointed out for accomplishing this end were constructed so as to obtain the full benefit of the descending current of cold air in refrigerating the articles placed therein for that purpose. The defense was that the invention had been anticipated by a patent to one Lyman. Upon an examination it was found that both inventions adopted substantially the same means for cooling the air, and causing its circulation through the refrigerator. It appeared, however, that Lyman had so arranged his device as to use only the ascending air for the purposes of refrigeration, upon the wrongful supposi-

tion that the greatest benefit was to be derived from that current. The complainant had seized upon this mistake, and, while adopting Lyman's method for confining and rotating the air, had arranged his refrigerating chamber so as to get the greatest benefit from the descending current. As to this the court said:

"It being then certain that Lyman contrived a machine which would produce the desired circulation, and could be used for refrigeration in the ascending current, it remains only to consider whether, if one desired to make use of the descending current for the same purpose, he could claim such a use as a new invention. It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not. * * * With both inventors the circulation, by means of an ascending and descending current, was the principal object to be attained. One considered the greatest benefit for the purpose of refrigeration was to be derived from the use of the descending current, while the other had his attention directed more particularly to the ascending current. They each had both, and could utilize both. It is no invention, therefore, to make use of one rather than the other."

In McCormick Harvesting Mach. Co. v. C. Aultman & Co., heretofore cited, this precise question as to whether it is always essential that a patentee shall describe the beneficial functions to be accomplished by the parts of his mechanism came before this court. It was a case of great importance, and received most careful attention. It was there said, concerning certain parts of Gorham's patent, that he had neither perceived nor described the beneficial effect resulting from certain segmental teeth in his improved grain binder, and that his patent should not be construed as including the invention subsequently asserted as within the scope of his patent, and dependent upon the functions of these teeth whose use was undescribed. Judge Taft, for the court, said, as to the effect on the patent of this defect in stating the results to be attained by these segmental teeth, that:

"It is not material that Gorham did not describe in full all the beneficial functions to be performed by the parts of his machine, if those functions are evident in the practical operation thereof, and are seen to contribute to the success of his device. Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073. It is difficult to believe that a man of Gorham's inventive genius did not perceive the useful functions which the parts of his machine so well performed, even though he did not specifically mention them all."

In Pfeifer v. Dixon-Woods Co., cited above, the circuit court of appeals had a like question to deal with. Judge Shipman, in delivering the opinion of the court, said:

"The specification closely, and altogether too closely, adheres to mere mechanical features, and creates doubt as to whether Tondeur thoroughly understood his invention. It indicates that the patentee did not understand the philosophical principles which caused his mechanism to produce an improved annealing. If he had known, they would have been alluded to in the patent; but an examination of the specification and its drawings leaves little doubt that the patentee meant, and that the specification means, to describe bars in such relation to each other that the glass is carried forward constantly in the same horizontal plane."

In the conclusion he added:

"He did not know, or he did not tell, why the new method would produce better results. He simply told how to construct a machine which carried

the glass through the leer on a level, and saved much breakage; but he ought not to lose the statutory benefits which would certainly belong to him if he had seen and described the philosophy of his machine accurately."

That the three sweepers made by appellant infringe the Plumb patent is a matter about which we have no doubt. Mechanically, they do not substantially differ from those held by Judge Brown to infringe in the Wetherbee Case. This was also the conclusion of Judge Severens, who, yielding to the interpretation placed by Judge Brown on the Plumb patent, found no reason for distinguishing between the devices which were made and sold by appellant, and those enjoined in the Wetherbee Case.

One of the infringing sweepers made by appellant is called the "Perfect." It is a four-wheeled sweeper. That is, in itself, no defense, if it is but a substantial duplication of Plumb's invention. At each side a straight spring rod passes through large holes in the ends of the case, this rod serving as the axle for a wheel at each end. Each rod is attached at its center to the top of the case by a bracket. Thus it is but a case spring-supported on its wheels, the spring differing only in form from that preferred by Plumb. There is little difference, mechanically, between appellant's "Star" and "Banner" sweepers and the "Perfect," already referred to. Each is spring-supported on its wheels. A straight metal rod, at each side of the case passes through large holes in the ends of the case, and carries a wheel at each end. These rods are controlled and pressed by a spring at each end of the case, so that the weight of the case is carried by these springs. None of these sweepers show any originality. They accomplish the same results attained by Plumb, by almost identically the same means. A mere change in the form of spring, or its place of attachment, by which vertical motion of the wheels relative to the case is obtained, is not invention. Our conclusion is that the decree of the circuit court must be affirmed.

### On Rehearing.

(February 4, 1896.)

A petition for rehearing has been filed, which presents a question not definitely discussed in the opinion filed, although it received full consideration. Attention is called to the peculiar phraseology of the concluding line of the second claim of the patent, and it is said from this that "Plumb himself saw fit to limit his invention, whatever it is, upon the face of the claim itself, by the words 'when constructed as and for the purpose described.'" The argument of counsel for the petitioner is that "this qualifying and limiting clause admits that Plumb did not have but one purpose. The claim is not for 'purposes' described, which would indicate that the mechanical combination of Plumb's claim might accomplish two or more purposes, but is limited to a single purpose"; "and," continues counsel, "what other purpose can be referred to, except the purpose of producing constant friction by means of his spring-pressure arrangement?" The first paragraph of Plumb's specification is in these words: "My invention relates to improvements in carpet sweepers having the brush rollers

operated by friction driving wheels; and the objects of my invention are,—First, to dump the dirt by revolving the pans by means of spring levers so constructed as to lock the pans firmly in place when returned to the sweeping position; second, to journal the driving wheel to bearings having both vertical and lateral motion, substantially as described." He then adds: "I attain these objects by the mechanism illustrated," etc. Thus, after stating that his invention relates to improvements in carpet sweepers having the brush roller operated by friction driving wheels, he then proceeds to state the objects or purposes of his invention, one of these objects being, as he states, to so journal the driving wheels as that they shall have both vertical and lateral motion. One method of doing this constitutes the remainder of his specification, and is the subject of his second claim. The benefits, effects, or results of vertical as well as lateral motion of the wheels relative to the case are several, as we have already pointed out, one of which is an increase of driving friction, if the pressure is not so great as to force the center of the brush head below the center of the driving wheel. But he nowhere states that such increase is the object or purpose of his invention; and to apply the phrase, "for the purpose described," to one, only, of the obviously beneficial functions of his combination when in cooperation with the other parts of a carpet sweeper, would be to do violence to the larger declaration of purpose appearing on the face of his specification. In no other place in the patent is there any expression of the inventor's object or purpose; and by the use of the singular form of the noun "purpose" the inventor evidently intended to refer to what he had expressly declared to be the second "object" of his invention.

The other points argued in the petition were fully presented and considered upon the original argument. The very forcible way in which the question of the proper interpretation of the second claim has been again presented has compelled the attention of the court, though it has not disturbed our faith in the soundness and justice of the conclusions heretofore announced. We have been obliged to consider and express an opinion upon the merits of the entire case, because the injunction awarded was granted only upon a full hearing by the circuit court, and upon a full consideration of the validity and proper interpretation of the second claim of Plumb's patent, and a determination that appellants had infringed that claim as construed. We find no error in the action of the circuit court in awarding the injunction, and affirm the decree, in so far as the question is involved by this appeal. Watch Co. v. Robbins, 12 C. C. A. 174, 64 Fed. 384–400. We do not think, in the present status of this suit, no final decree having yet been announced, that we are called upon to determine the effect of this affirmance should the case be again appealed after the account of profits and damages has been stated and confirmed. The mandate will simply recite that the court finds no error in the decree awarding an injunction. The application for a rehearing must be denied.