## WARREN WEBSTER & CO. v. C. A. DUNHAM CO.

(Circuit Court of Appeals, Eighth Circuit. September 19, 1910.)

No. 3,315.

*(Syllabus by the Court.)*

1. PATENTS (§ 27*)—NEW USE—WHEN PATENTABLE.

The application of an old machine or combination to a new use is not in itself invention, or the subject of a patent.

If the relations between the two uses be remote, and if the use of the old device produce a new and beneficial result, the application to the new use may involve the exercise of the inventive faculty and be patentable.

But it is only when the new use is so recondite or so remote from that to which the old device has been applied, or for which it was evidently conceived, that its application to the new use would not readily occur to the trained mind of the ordinary mechanic skilled in the art, seeking to devise means to accomplish the desired function, that its conception rises to the dignity of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. § 27.*

Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

2. PATENTS (§ 328*)—LETTERS PATENT No. 454,964 TO HALL, JUNE 30, 1891, FOR DOUBLE USE AND VOID.

The combination of thermostatic valves with the return pipes or the connections between the return pipes and the radiators of suction or vacuum systems of steam heating, such as are disclosed in letters patent No. 256,089, to Williames, issued April 4, 1882, did not rise to the dignity of an invention, in view of the combination of such valves with the return pipes of pressure steam-heating systems shown in letters patent No. 113,434, to John J. Jordan, issued April 4, 1871. And letters patent No. 454,964, to W. E. Hall, issued June 30, 1891, was for a double use, and the patent for it is void.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Bill by Warren Webster & Co. against the C. A. Dunham Company. Decree for defendant, and complainant appeals. Affirmed.

Ernest Howard Hunter, for appellant.

Robert W. Hardie (Edwin N. Farber, William L. Read, and Charles A. Munn, on the brief), for appellee.

Before SANBORN and ADAMS, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. This case involves the validity of letters patent No. 454,964, issued June 30, 1891, for an improvement in a steam-heating apparatus, the single claim of which reads in this way:

"In a steam-heating system, the combination with a steam pipe leading from the boiler, a radiating system connecting with the steam pipe, and a return pipe connecting with the lower part of a radiating system, of a thermostatic steam trap situated in the connection between the radiating system and the return pipe, all substantially as and for the purpose specified."

Prior to 1882 the steam in a steam-heating system was forced by the engine or by a loaded exhaust pipe through the supply pipe, the radiators or heating coils, and the return pipe into the open air or into some suitable receptacle. In such a system a pressure in excess of that of the atmosphere was obviously indispensable to its operation. Where there were many radiators or heating coils connected with the supply pipe, the pressure necessary to drive the steam from many of them at the same time caused a choking and back pressure in the return pipe, which retarded the circulation of the steam and made the heating of the various radiators difficult and expensive. In order to remove this objection Napoleon W. Williames invented a combination with an unobstructed exhaust pipe and the other elements of this system of a pump or other like means for producing a partial vacuum in the return pipe and the radiators or heating coils connected therewith, by means of which the water of condensation, the steam, and air were drawn or sucked out of the return pipe, and letters patent No. 256,089 were issued to him for this invention on April 4, 1882. For the sake of brevity the apparatus system and return pipe through which the steam is forced will be called the pressure and that in which it is drawn by the partial vacuum the suction apparatus system and return pipe. The essential distinction between the systems is that the exhaust pipe is unobstructed, and the pump or other device to form the partial vacuum sucks the steam through the pipes in the latter, while the steam is forced through them in the former. The improvement made by Hall consisted of the combination of a thermostatic steam trap or valve placed in the return pipe, or in the connection between the radiators and the return pipe, with the other elements of a suction system. Without this valve the suction system was but partially successful, because the steam was short-circuited; that is, an excess of steam was drawn through the short lines of pipe and an insufficient amount from the long lines, and because it was difficult to regulate or modulate the heat in the respective radiators, and frequent readjustments of their

valves were necessary. The use of the thermostatic steam trap or valve remedied these defects. This trap placed in the connection between each radiator and the return pipe automatically opened and discharged the condensed water and air when it was cool, and when the steam was drawn through it, and it was again heated, it closed, and prevented the unnecessary use and escape of the steam, the heat of each radiator was readily and automatically modulated, and the suction system with this improvement became exceptionally successful commercially, and displaced the pressure system very generally in hotels and other buildings, where many radiators were heated from a single supply pipe.

But thermostatic valves were old, and their combination with the mechanical elements of the pressure system of steam heating alternately and automatically to release the water of condensation and to confine the steam had been described in letters patent No. 113,434, issued on April 4, 1871, to J. J. Jordan, and was well known to mechanics skilled in the art before Hall made his improvement.

Counsel for the complainant concedes that if the patent to Hall is sufficiently broad to cover the combination of the thermostatic steam trap with the supply pipe, radiators, and return pipe of a pressure system of steam heating, it is anticipated by previous patents and void; and the counsel for defendant admit that if the patent is valid the defendant has infringed it. So the case presents two questions: Is the true interpretation of the patent that it is limited to the combination of the thermostatic valve with the supply pipe, the radiators or heating coils, and the return pipe in a suction or vacuum system, or that it secures by its terms a monopoly of that combination in a pressure system also, and if its true construction be that it is limited to the protection of this combination in a suction system only, was the application of the thermostatic valve shown in the patented descriptions of the pressure system to the suction system the exercise of inventive genius or the skill of the trained mechanic familiar with the art?

While the patentee did not restrict his monopoly in his claim to the combination of the thermostatic valve with the elements of the suction system, his statements in his specification strongly indicate that this was his intention; and conceding, without discussion, that he accomplished his purpose, let us consider the second question.

The thermostatic valve performed the same function in the suction system as in the pressure system. It automatically discharged the water of condensation, the air, and the steam when it was cool, and confined the steam when it was warm. In 1871 Jordan had patented it, and had described its combination and use with steam-heating pipes to discharge the water of condensation and prevent the escape of steam. A patentee who has plainly described and claimed his machine or combination has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether he was aware of these uses or methods of use when he claimed or secured his monopoly or not. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 709, 45 C. C. A. 544, 560; Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38

L. Ed. 121; Goshen Sweeper Co. v. Bissell Carpet-Sweeper Co., 72 Fed. 67, 19 C. C. A. 13; Frederick R. Stearns & Co. v. Russell, 85 Fed. 218, 226, 29 C. C. A. 121, 129; Manufacturing Co. v. Neal (C. C.) 90 Fed. 725; Tire Co. v. Lozier, 90 Fed. 732, 744, 33 C. C. A. 255, 268.

But counsel argue that the suction system was unknown when Jordan made his invention, and that, while he secured the combination of a thermostatic steam trap with a pressure return pipe, Hall secured the new combination of the thermostatic trap with the suction return pipe in 1882. The answer is that Jordan secured the monopoly of every use of the steam trap and return pipe which he disclosed, until Williames in 1882 secured a monopoly of the use of his new combination of the pump or similar device for causing a partial vacuum in the return pipe with that pipe, the radiators, and supply pipe, and when the patent of Williames expired in 1899 Jordan and, since his patent had also expired, all others then acquired the right to use the combination of the thermostatic steam trap with the suction system.

The improvement made by Hall consisted of the application of the thermostatic valve of the return pipe of the pressure system to the return pipe of the suction system. Counsel argue that this was an invention, because it did not suggest itself to those skilled in the art for 11 years after Williames made his invention, while the results of the suction system were unsatisfactory, and there was a demand for the improvement wrought by the use of the steam trap during all this time, because after the application of the steam trap to the suction system that system became exceptionally successful, and because its application prevented back pressure and short-circuiting, and enabled the manufacturer to modulate automatically and separately the heat of each radiator, results neither attained nor foreseen prior to this improvement. These arguments are persuasive. They have been carefully considered. But the application of an old device or combination to a new use is not in itself an invention, or capable of protection by a patent. If the relation between the two uses is remote, and the old device or combination produced a new result by virtue of its new application, that application may constitute invention. Where a machine or a combination is discovered in a remote art, where it is used to perform a different function, and where it was not designed and was not apparently suitable to accomplish the thing desired, the application of it with proper mechanical adaptation to a new use is often the result of the exercise of the inventive faculty and may be protected by patent. But the thought that an existing machine or combination, discovered in the same art or one nearly analogous to it, designed and suitable to perform a similar function, may be used or adopted to accomplish the desideratum, is not the product of inventive genius, but the result of the application of the skill of the mechanic to the subject under consideration. It is only when the new use is so recondite and remote from that to which the old device and combination has been applied, or for which it was conceived, that its application would not occur to the mind of the ordinary mechanic skilled in the art, seeking to devise means to perform the desired function, with the old machine or combination before him, that its conception may rise to the dignity

of invention. Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 390, 21 Sup. Ct. 409, 45 L. Ed. 586; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 447, 23 C. C. A. 223, 237; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 702, 45 C. C. A. 544, 553.

The court below was probably of the opinion that a mechanic skilled in the art, with a pressure system of steam heating with the thermostatic valve of Jordan attached to its return pipe, as Jordan said, "for effectually draining from steam-heating and other steam pipes the water of condensation and preventing the escape of steam," and the patent of Williames, showing the combination of the pump or other device for producing a partial vacuum in the return pipe with the return pipe radiators and supply pipe of a heating system, as Williames said, to "perform the double function of heating the building without back pressure to the engine and reducing the normal pressure by creating a partial vacuum in the exhaust pipe," before him, would not long fail to think that thermostatic valves in the return pipes of suction systems, or in the connections between those pipes and the radiators, would be very likely to prevent back pressure and short-circuiting, and to modulate automatically the heat of the radiators; and it is probably for this reason that the court below dismissed the bill. A review of the evidence has failed to convince that it was in error. The thermostatic valve was found in the same art in combination with a pressure return pipe performing the same function that it performs in combination with the suction return pipe and producing results similar to those which the suction system demanded. Its application to the latter system failed to rise to the dignity of an invention, and the decree below is affirmed.