## In re DARWIN.

### (Circuit Court of Appeals, Sixth Circuit. July 8, 1902.)

### No. 1,062.

**1. BANKRUPTCY—AVOIDING EXECUTION.**

Under Bankr. Act 1898, § 67, declaring void all levies and liens obtained through legal proceedings against an insolvent within four months before the filing of the petition on which he is declared a bankrupt, a lien of execution on property purchased by the bankrupt within sixty days of the petition, he having been insolvent more than four months, is void, though in the state in which the judgment was obtained and in which was the property there prevails the common-law rule that the lien of the execution relates back to the teste thereof,—that is, the first day of the term at which the judgment was rendered,—and this was more than four months prior to the petition in bankruptcy.

Petition to Review an Order of the District Court of the United States for the Southern Division of the Eastern District of Tennessee.

The case was submitted on the following facts: On October 24, 1893, Carney Bros. recovered judgment against John Gollahon, the bankrupt, in the supreme court at Knoxville, Tenn., for the sum of $261.85 and costs, amounting to $33.66. An alias execution on this judgment was issued by the clerk of the supreme court September 6, 1900, tested the first day of the preceding term, to wit, the second Monday in September, 1899, which came to the hands of the sheriff of Rhea county, Tenn., on September 7, 1900, and was by him levied September 8, 1900, on a stock of merchandise belonging to the bankrupt. This levy, and another one subsequently levied, precipitated the bankruptcy of Gollahon, who filed the petition the same day, but a few hours later, and was adjudged a bankrupt herein on the 10th day of September, 1900. This stock of merchandise so levied on was taken from the custody of the sheriff of Rhea county, he having seized it in making said levy, and turned over to a temporary receiver on the order of the court in which said bankruptcy proceedings were instituted (the United States district court at Chattanooga), and was subsequently, on September 22, 1900, under a similar order of said court, turned over to a trustee in bankruptcy, who converted same into cash. The judgment creditors, Carney Bros., in a proper manner herein, asserted a prior claim on the stock of goods at the time of the bankruptcy proceedings by virtue of the levy of said execution, and which levy they claimed was unaffected by such bankruptcy and asked that said judgment, with interest and cost, be paid in full to the extent of the property seized under said execution, and subsequently by the bankruptcy trustee converted into cash. The merchandise so levied on by the sheriff was of value sufficient to have paid Carney Bros.' debt and all costs, and was by the trustee sold for a cash sum sufficient for this purpose, but insufficient to pay all his debts; and such cash is now in the trustee's hands. The sheriff made his official return of said execution, showing therein the costs and commission of the sheriff, including protection to the merchandise while holding it under his levy, to be $19.04. The bankrupt was insolvent

on the date of the levy of said execution, and had been for several months previous (more than four months). Petitioners, Carney Bros., knew nothing of this, however, and the said Gollahon had been, and was at the time of the levy, merchandising at retail, until his stock was seized and his store closed by the sheriff. He acquired the stock of goods on which the execution was levied about 60 days prior to his adjudication in bankruptcy, and had been selling same at retail ever since. He had an interest in a stock of merchandise in an adjoining county at a date more than four months before the filing of the petition, and owned same until some three months before such filing, when he sold it for a note for $600, all of which he used as collateral in purchasing a part of the stock of goods levied on under said execution. Upon the foregoing facts the referee refused to allow priority to the judgment creditors, Carney Bros., holding that the lien and levy of the execution was avoided by the bankruptcy proceedings, and on petition of said judgment creditors the facts and question of priority were certified to the district judge, who reversed the ruling of the referee, and made an order for the payment of the aforesaid judgment, interest, and costs in full.

Burket, Miller & Mansfield, for Carney Bros.

A. P. Haggard, for trustee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

Section 67 of the bankruptcy act provides:

"That all levies, judgments, attachments or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien, shall be deemed wholly discharged and released from the same."

Under this section the question presented is, when did the lien of the levy attach to the property in such sense that it may be said to have been "obtained" within four months, within the meaning of the act? An examination of the decisions of the supreme court of Tennessee discloses that the rule of the common law prevails in that state, and the lien of the execution relates back to the teste thereof, which is the first day of the term at which the judgment was rendered. This was decided in the early case of Preston v. Surgoine, Peck, 72–80, and seems to have been adhered to as a general rule since. In Barnes v. Hayes, 1 Swan, 304, the supreme court of Tennessee held that the execution related to the date of the teste, "which is the first day of the term from which it issues, and operates as if it were actually running from the date of its teste to the day of its return, and is a lien on all the goods of the defendant owned by him during that period." In Battle v. Bering, 7 Yerg. 528, 27 Am. Dec. 526, it was held that, if the judgment debtor sold the property before the execution issued, but the teste of the execution was prior to the day of the sale, the property is bound in the hands of the purchaser. In that case Chief Justice Catron declared that, until the legislature changed the rule, it was the duty of the court to administer it as it had been settled, although, in his opinion, the safer rule was found in the statute of Charles II, declaring that no execution should be a lien on personals so as to defeat bona fide purchasers. In Berry v. Clements, 9 Humph. 311, it was held that personal property transferred in good faith before the actual

rendition of the judgment, but after the teste, was not bound by the lien, as it could not fasten upon the property which had been aliened before the judgment was rendered. In that case Justice McKinney observed that the common-law fiction might be repelled, whenever necessary to the attainment of justice, by showing the true time of signing the judgment, providing this could be made to appear from any entry or memorandum in the record. In Edwards v. Thompson, 85 Tenn. 720, 4 S. W. 913, 4 Am. St. Rep. 807, the court held that, as a growing crop of corn cannot be levied on in Tennessee until after November 15th, it is not subject to the lien of an execution until that date, so as to overreach or defeat a prior bona fide sale by the owner. Judge Caldwell, who delivered the opinion, recognizes the rule that the lien of an execution in Tennessee relates to the teste, and attaches to all personalty owned by the debtor between the teste and the levy of the execution, so as to defeat all intermediate transfers. After pointing out that this doctrine of relation had its origin in the desire to prevent the debtor from alienating his property to the injury of the creditor after judgment, the learned judge adds:

"But if for any reason the property of the debtor cannot be seized under execution, it cannot be affected by the usual lien or the doctrine of relation. If the property be absolutely protected from execution under statutory exemption laws, of course there is no lien upon it. So, if it is free from execution during a specified period, it is free from the lien during the same period. The lien of an execution, as such, exists only in connection with the execution itself, and cannot attach to property before the property is subject to levy."

In the case in hand we think an application of this reasoning results in holding that there could be no lien upon the property before the same was acquired by the debtor. It was not subject to levy until it belonged to the judgment debtor. To extend the lien to the property before that time is to extend a legal fiction to the absurdity of holding the property bound in the hands of strangers to the judgment. As Judge Caldwell points out, the rule was created by the courts to prevent one from alienating his property which ought to be subject to the judgment debt. When the judgment is rendered and execution issued, the lien fastens upon the property owned by the debtor. If he shall acquire more after judgment, it may be seized in execution, and is bound from the time it became subject to the execution; certainly not before. In the present case the property was not the subject of seizure upon execution until the debtor acquired it. No lien could be obtained upon it until that time. The lien arises from the execution, and attaches to the property in order to make the execution effectual, not to make the lien superior to the execution, and by fiction fastening upon property not subject to levy. In this view, as the property was acquired by the bankrupt within four months prior to the filing of the petition, we think the lien was vacated, and the property passed to the trustee freed therefrom. We conclude the referee was right in so holding, and the district court erred in reaching a different conclusion.

The judgment will be reversed, and the cause remanded for further proceedings in conformity with this opinion.