MORGAN ENGINEERING CO. v. ALLIANCE MACH. CO.

(Circuit Court of Appeals, Sixth Circuit. November 2, 1909.)

No. 1,917.

1. PATENTS (§ 165*)—CONSTRUCTION—ADVANTAGES NOT CLAIMED.
    A patentee is entitled to have his patent considered with reference to an advantage over the prior art necessarily secured by the operation of the device as described, even though such advantage is not specifically claimed.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TRAVELING CRANE.

The Shem patent, No. 791,951, for improvements in double trolley traveling cranes, was not anticipated, and discloses patentable invention in view of the marked superiority in safety and economy, in more extended use and constant operation of the patented structure over those of the prior art, although claims 1 and 2 are void as too broad. The remaining claims also *held* infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by the Alliance Machine Company against the Morgan Engineering Company. Decree for complainant, and defendant appeals. Affirmed.

This suit was brought by the Alliance Machine Company, assignee of one George W. Shem, to obtain relief against alleged infringement by the Morgan Engineering Company of patent No. 791,951, granted by the United States March 17, 1905, to Shem for certain improvements in cranes.

It is admitted by the answer that the letters patent were granted to Shem, but it is denied that he was the original inventor; and, after the usual denials, it is alleged that the improvements do not constitute patentable invention or discovery, and also that the material parts of the invention had prior to its date been described and patented in divers printed publications and patents, and a number are specified in paragraph 8 of the answer, and in an amendment made thereto, among which are letters patent No. 528,621, granted by the United States to A. J. Shaw, November 7, 1904, for improvements in hoisting machinery, and letters patent No. 78,579, granted in Germany to Beck and Henkel, in 1894; also in a certain design made by one Sawyer for the Shaw Electric Company. Thereupon replication was filed. Proofs were taken, the cause was heard, and on November 25, 1908, decree was entered finding for complainant, allowing recovery of gains and profits, ordering reference and accounting and granting writ of injunction. From this decree the Morgan company appealed.

The nature and object of the patent in suit are in part thus stated in the specifications: "My invention relates to that class of traveling cranes which carry both a main hoisting-trolley and an auxiliary hoisting-trolley. The object of my invention is to so construct such a crane as to permit ready accessibility to the supplementary trolley, to reduce the strain upon the girders which constitute the side members of the crane-bridge, to permit of the mounting at any desired point on the bridge, preferably at the longitudinal center of the same, of the motor which drives the bridge-traversing mechanism, to increase the range of movement of both of the trolleys, and to permit of a more compact arrangement of the hoisting mechanism on the main trolley than is possible with the ordinary construction of crane."

The manner of obtaining the advantages mentioned is thereupon shown by descriptive words and drawings. The first drawing displays a side elevation of the crane made according to the invention, and the second one an end view or cross-section of the crane. Further description, with copies of drawings, will be found in the opinion. It is stated in the specifications that the invention "is shown as applied to a ladle-crane." It is then stated that the ordinary construction of ladle-cranes was open to many objections: That the weight of the supplementary trolley and its load caused excessive strain upon the girders supporting the crane-bridge; that so suspending and supporting the supplementary trolley required the hoisting-chains of the main trolley to be placed outside of the girders, also requiring a wide separation of the hoisting-drums, prevented locating the bridge-driving motor on any part of the bridge except at its extreme end, also required a shaft almost as long as the crane-bridge for transmitting power from the motor to one end of the bridge-trucks, and so limited the range of movements of trolleys on the crane-bridge.

The plan adopted for overcoming these objections in substance was to widen the space between the bridge girders, place between them two parallel girders, operate the supplementary trolley on these intermediate girders, and suspend the hoisting-chains depending from the main trolley inside instead of outside of the main girders. It is then stated that the plan proposed overcomes the objections to the usual construction thus: " * * * The parts are compactly disposed, the strains are divided and distributed, a central location of the bridge-driving motor upon the bridge is permitted with its accompanying advantage of relatively short lengths of transmitting-shaft between the motor and the bridge-supporting trucks, and in which, furthermore, the range of travel of either trolley is not restricted by the presence of said motor or other appurtenances of the crane, a full travel of the trolley from one end of the bridge to the other being permitted." '

The claims are as follows:

"1. A crane having a bridge with main hoisting-trolley mounted upon the main girders of said bridge, and a supplementary trolley mounted upon supplementary girders independent of said main girders, substantially as specified. .

"2. A crane having a bridge with main hoisting-trolley mounted upon the main girders of said bridge, and a supplementary trolley mounted upon supplementary girders independent of said main girders, said supplementary girders being located between the main girders, substantially as specified.

"3. A crane having a bridge with main and supplementary hoisting-trolleys, the main hoisting-trolley being mounted upon the main outer girders of the bridge, and the supplementary trolley being mounted upon supplementary interior girders, the hoisting-chains from the main trolley depending between the said main and supplementary girders, substantially as specified. '

"4. A crane having a bridge with main and supplementary hoisting-trolleys, the main hoisting-trolley being mounted upon the main outer girders of the bridge, and the supplementary trolley being mounted upon supplementary interior girders, the hoisting-chains from the main trolley depending between the said main and supplementary girders, and the hoisting-chains from the supplementary trolley depending between the supplementary girders which carry said trolley, substantially as specified.

"5. A crane having a traveling bridge with outer main girders, supplementary inner girders, main hoisting-trolley mounted upon the main girders, and having its hoisting-chains depending between the main and supplementary girders, a supplementary hoisting-trolley mounted upon said supplementary girders, and a bridge-driving motor centrally mounted upon one of the outer girders, substantially as specified."

. . H. A. Seymour and F. P. Fish, for appellant.

. C. P. Byrnes, for appellee, .    . . .

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges. .

WARRINGTON, Circuit Judge (after stating the facts as above). In the view we take of this case, it is necessary first to consider whether the patent involves the quality of invention. It is claimed that Shem's improvements over the prior art consisted in the relocation and rearrangement of the parts of the well-known double trolley traveling crane, without the result of any new function or mode of operation, and that this does not amount to patentable invention. The relevance and force of this contention may be tested by a comparison of the advantages of a crane made according to this invention, with the disadvantages of the type of crane in use at the date of the patent. The comparison will be more accurate and helpful if it is applied, as patentee in his specifications applied his invention, to ladle-cranes.

The description given of the prior state of the art in the specifications of the letters patent, as in substance pointed out in the statement, seems to us to be borne out by the evidence. The same is true of the advantages attained by the invention, as there stated.

This is a combination patent. It has relation to hoisting and transporting mechanism as applied to ladle-cranes. As stated by learned counsel for appellant, this type of traveling crane "is most properly used for the handling of molten steel delivered from the furnaces of the steel plant into a ladle, and for carrying this ladle to a place where the contents of the ladle are discharged into ingot molds." Necessarily the inventor had to do with an old subject and an existing art. The movement and uses made of any substance as necessary and dangerous as is molten metal must always have engaged the faculties of men in contriving new and improved safety devices for its control.

An illustration of the old form of ladle-crane is, we think, fairly represented by the following sketch:

Fig. 1 represents the bridge of the crane in side elevation, and Fig. 2 represents it in cross-section. A, A, are the main girders attached to the end carriages, B, B, having wheeled trucks that run on tracks, C, C. The main trolley, D, is carried on tracks of the main girders, A, A, and is provided with hoisting drums, E, E, from which the hoisting chains are suspended on the outside of the main trolley, D, and outside of the main girders, A, A. Each hoisting-chain as shown on Fig. 2 is fastened on the lower end to a cross-bar, from the ends of which are suspended hooks for engaging the trunnions of the ladles. The auxiliary trolley, G, is operated over runways attached to the inside lower edges of the two main girders, A, A. The auxiliary trolley is equipped with one hoisting-chain carrying a hook on its end, used for operating the ladles. This is what is known as the overhanging ladle-crane.

The following are copies of the drawings of the patent in suit:

Fig. 1.

Fig. 2.

These are described in the specifications thus:

"Fig. 1 is a side elevation of a crane constructed in accordance with my invention, and Fig. 2 is an end view of the same on a larger scale.

"Referring in the first instance to Fig. 1 of the drawings, 1, 1, represent the main girders upon which the bridge of the crane is mounted and upon which it can travel, said bridge consisting of a pair of longitudinal side girders, 2, with suitable transverse connections at the ends, which connections constitute end carriages, 3, each of the latter having a wheeled truck running upon rails on the main girder, 1, and some of the wheels of these trucks being rotated

by power derived from a motor, 4, which is mounted on the bridge of the crane, so as to effect the movement of the latter back and forth upon the supporting-girders, 1.

"Mounted upon suitable rails upon the traversing bridge of the crane is a trolley, 5, provided with hoisting mechanism of any appropriate character and with a motor and gearing for operating said hoisting mechanism, * * * the hoisting mechanism having two drums, 6, whose depending chains support a bar, 7, provided with depending ladle-supporting hooks, 8. * * *

"In carrying out my invention I provide the crane-bridge with supplementary girders, 9, secured at their ends to the carriages, 3, and located so far inside of the main girders, 2, as to provide ample room between the two sets of girders for the operation of the hoisting-chains from the main trolley. Upon these supplementary girders, 9, is mounted so as to traverse longitudinally a supplementary trolley, 10, which is provided with appropriate hoisting mechanism and with a motor, 11, for operating the same, the chains depending from the hoisting mechanism of the supplementary trolley between the girders, 9, as shown in Fig. 2, in which these chains are illustrated as employed in connection with the ladle-tipping hook, 12."

It will be observed that the auxiliary trolley rails of the invention in suit are not connected with the inside lower edge of the main girders, as were the flanges in the prior art, and that the weight of the supplementary trolley with its load no longer exerts excessive side strain upon the girders, also, as succinctly stated by one of the witnesses: "second, the draft of the main hoisting tackle comes inside instead of outside the base of the supports to the main trolley; third, since the outside of the main girders is now free from the main hoisting ropes, the bridge-driving motor may be located outside and at the center instead of at one end of the bridge to eliminate the long shaft drive; fourth, the auxiliary trolley becomes readily accessible for repairs, particularly the renewal of the supporting wheels, bearings and gears; and, fifth, the range of travel of the trolley on the bridge is increased."

We think these advantages are obvious, unless it be the one gained by the removal of the main hoisting tackle from the outside of the main trolley and main girders to points within the base of support of the main trolley and inside of the main girders. It is shown by the evidence that the weight of molten metal carried in a ladle is from 60 to 125 tons, and that when the shock of this great weight is cast upon the hoisting tackle over one end of a main trolley, through the breakage of the hoisting tackle depending on the outside of the other end of the main trolley of an overhanging crane, there is a tendency to tilt and overturn the main trolley. It is shown without dispute that this actually happened in at least one instance. It is true that it occurred under conditions somewhat peculiar; and, also, that the escape in such a case of molten metal might cause more injury than would be caused by the overturning alone of the main trolley. But it is equally true that the accident caused such an influence upon experienced users of overhanging cranes, as to create an unusual demand for a crane with hoisting tackle depending within and not without the base of support of the main trolley. It is not claimed that a trolley could be upset upon a crane with the hoisting tackle so arranged. The claim made that this advantage cannot be considered for the reason that it is not enumerated among the advantages stated in the letters patent is, we think, not well founded. In one of the objections stated in the specifications to the overhanging trolley of the old meth-

od of mounting the supplementary trolley upon tracks fastened to the inner sides of the main bridge girders is that such method "necessitates the location of the hoisting-chains of the main trolley outside of the girders, 2, thus requiring a wide separation of the hoisting-drums, 6, and preventing the location of the bridge-driving motor, 4, upon any part of the bridge except at the extreme end of the same, so that a shaft almost as long as the crane-bridge itself must be employed for transmitting power from such motor to one of the bridge-trucks. This also serves to limit the range of movement of the trolleys on the crane-bridge."

Moreover, as appears in the statement, it is expressly stated in claims 3, 4, and 5 of the letters patent that the hoisting-chains depend between the main and supplementary girders, and this fact is also displayed in Fig. 2 of the drawings. Even if the patentee at the time of making his application did not know of this advantage, or knowing failed distinctly to express it, he, in view of what he did state and show, is entitled to have his invention considered with reference to it. Indeed, the crane cannot be constructed and operated in accordance with the plain terms of his description without observing and securing this advantage. This alone is sufficient. Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 72 Fed. 67, 73, 75, 19 C. C. A. 13; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 895, 53 C. C. A. 36; Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 110, 415, 54 C. C. A. 584.

Thus we have only to assemble and consider the advantages of the patent in suit, in order to gain an appreciation of the departure made from the old art. The sum of these advantages not only marks the progress made, but suggests inquiry into their origin. Is their origin to be found in mental operation of the degree of invention, or only of the degree exercised in mechanical skill? The advantages of the invention seem to be traceable to the idea of so carrying the burdens to be borne by the machine as to avoid strains upon the parts least calculated to bear them; and they are traceable also to the further idea of so adjusting the new parts to the old parts as to attain greater safety and economy and also more extended use and constant operation. The inventor then devised the plan before described for carrying his ideas into execution. This involved at once a novel machine, that could not be rightly classed with the overhanging ladle-crane. It is difficult to understand why this conception is not patentable invention.

While it may not always be helpful in determining whether a given act or result involves the exercise of constructive faculty rather than mechanical skill to resort either to the fact that the matter in dispute has been allowed to lie dormant for years in the face of needed solution, or to the approval accorded to such solution by men of scientific knowledge and practical experience immediately upon becoming aware of it, yet it is not always easy or advisable to repel the influence of such facts. The evidence reveals persistent and repeated attempts for as much as 10 years prior to the date of the patent in suit to overcome the difficulties solved by this patentee. Then, as soon as the patent in suit became known, cranes offered and made under it met with

the approval of quite a number of mechanical engineers and skilled mechanics, and with sales to experienced users of ladle-cranes. The appellee commenced business with efforts to manufacture and sell ladle-cranes of the overhung type, but failed. When, however, it began the offer and sale of cranes made under the patent in suit, the appellee, according to the evidence and in view of the large cost of the machines, met with remarkable success.

The experts for appellant referred to divers earlier patents and designs for the purpose of showing anticipation, either wholly or partly, of the patent in suit. But, considering the entire evidence, we think these were fairly differentiated. No ladle-crane was ever devised and built which contained the combination of improvements here displayed, prior to the date of this patent. The nearest approach to any substantial portion of this form of crane in the way of design, as distinguished from patent and construction, was in a blueprint devised by one Sawyer and sent with a proposal to build a crane for the Illinois Steel Company; but the proposal was not accepted and no publication of either the proposal or the blueprint was ever made, and the whole matter seems to have been forgotten if not abandoned by the parties themselves, until a representative of appellant, in search of evidence for the trial of this cause, discovered the papers.

The claim of counsel for appellant is not as under the authorities it could not be that this unused prior drawing is an anticipation within the meaning of the patent statute. The blueprint is offered in support of the claim that the invention in suit lacks patentable quality; and this is upon the theory that the fact that Sawyer devised a plan having certain features corresponding with some portions of the patent in suit indicates that the present patent was obvious to the skilled mechanic. The facts disclosed in the decisions offered in support of the effect that should be given to the blueprint differ so widely in substance and legal effect from the import of the facts disclosed here as to render present discussion of those cases unimportant.

The claim that the patent granted in Germany to Beck & Henkel for a meat hanger is an anticipation of the patent in suit does not seem to be based upon analogy either in purpose or function between the two devices, but rather upon similarity in definition that can be applied to parts of both; and also upon the fact that it is asserted in each patent that it is not limited to the particular device therein described.

We may as well say now as later that we regard claims 1 and 2 of the patent in suit as too broad, both with respect to the prior art and the express objects and scope of the crane described and illustrated. There can be no doubt that the rest of the patent, considered either as a whole or with reference to the remaining claims, contemplates a traveling-crane and motors to drive the bridge mechanism. These main objects and features of the patent in suit are not disclosed and are plainly not intended by the German patent. In view of the weight of the evidence touching the marked differences in mechanism and combination of parts in the two inventions, and of the palpable difference in purpose and use of the two machines, we are satisfied that nothing in either of them would afford material suggestion for the

other. See decision of this court in National Tube Co. v. Aiken, 163 Fed. 254, 258, 91 C. C. A. 114; also Eames v. Andrews, 122 U. S. 40, 55, 7 Sup. Ct. 1073, 30 L. Ed. 1064.

As it seems to us, therefore, the patent in suit discloses novelty and merit sufficient to show patentable invention, and falls well within rules of decision of this court. Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 72 Fed. 67, 74, 19 C. C. A. 13 (cited above); Muller v. Lodge & Davis Machine Tool Co., 77 Fed. 621, 629, 23 C. C. A. 357; Star Brass Works v. General Electric Co., 111 Fed. 398, 400, 49 C. C. A. 409; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 895, 53 C. C. A. 36; A. R. Milner Seating Co. v. Yesbera, 133 Fed. 916, 919, 67 C. C. A. 210; Rich v. Baldwin, Tuthill & Bolton, 133 Fed. 920, 66 C. C. A. 464; National Tube Co. v. Aiken, 163 Fed. 254, 91 C. C. A. 114. See, also, Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 143, 53 C. C. A. 341; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 707, 45 C. C. A. 544; Anderson v. Collins, 122 Fed. 451, 459, 58 C. C. A. 669; Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; The Barbed Wire Patent, 143 U. S. 275, 283, 12 Sup. Ct. 443, 36 L. Ed. 154; Cash Reg. Co. v. Cash Indicator Co., 156 U. S. 502, 515, 15 Sup. Ct. 434, 39 L. Ed. 511. See, also, discussion of Mr. Justice Day, applicable in principle, in Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034.

Upon the question of infringement, we think the evidence shows that appellant's crane is a substantial embodiment of appellee's invention. It appears that prior to the date of the patent in controversy all of appellant's cranes were of the overhanging type, and that, after that date, it constructed and sold ladle-cranes which are the subject of the alleged infringement. The claim of infringement is urged by appellee in several ways. One is that appellant has eliminated from its later type of ladle-crane precisely those objectionable features of ladle-cranes of the old art, as those objections are stated in the specifications of the patent in suit. Another is that appellant has in substance and effect adopted the plan of the inventor of the patent in suit for constructing and operating the alleged infringing machines, and so has taken to itself the advantages of appellee's invention.

The appellant has changed the draft of the hoisting tackle of the main trolley to points within instead of without the base of its support, and so has escaped the objectionable overturning feature. It does this by splitting the main girder of the old type and placing the two parts or their equivalents in parallel so as to furnish space for operating the hoisting chains depending from the main trolley between these girders. It lengthens the main trolley and supports it by doubling its wheel bearings so as to carry its trucks on eight wheels instead of the old bearings of four wheels. It gains accessibility to the supplementary trolley and lessens materially if it does not avoid lateral strain upon each interior main girder by placing two smaller girders between and parallel to the interior main girders aforesaid, and fastening the smaller girders to the larger interior girders by braces or lacework. Upon this interior trackway the supplementary trolley is operated; and the accessibility mentioned is obtained over the passage-

way furnished along this lacework. Under this method of construction, the main and auxiliary trolleys are operated over the entire length of their respective tracks. Moreover, this method furnishes the means of placing the bridge motor centrally on the principal outside girder instead of at its end.

Much is said in the evidence and briefs in support of the respective claims that appellant's plan does and does not amount to infringement. Efforts are made through processes of most literal interpretation to differentiate appellant's design from the patent in suit. Ingenious as this method is, we think it fails in ascertaining the intent of either the inventor or the alleged infringer. It sacrifices substance to form. Indeed, after careful consideration of the evidence and comparison of the drawings and models, we are constrained to believe that the differences in design and operation of the infringing device are but colorable. It follows that the question urged under the doctrine of equivalents cannot arise.

Subject to the qualification that claims 1 and 2 of the patent in suit are void, the decree must be affirmed, and it is so ordered.

NOTE. On petition of appellant to modify decree and mandate of this court, its mandate was recalled, and modification allowed, affirming decree below except as to claims 1 and 2 of the patent in suit, but without costs in this court, and disallowing complainant costs in the Circuit Court. Disclaimer by the latter of said claims 1 and 2 was required to be filed in the Patent Office, and a certified copy thereof in the court below, before final decree entered. No direction given as to further costs, if accounting had.