## UNITED GAS IMPROVEMENT CO. v. GAS MACH. CO.

(District Court, N. D. Ohio, E. D.   December 23, 1913.)

No. 167.

1. PATENTS (§ 26*)—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

A new combination of old elements which by their co-operative action produce a more beneficial result amounts to invention, which is not negatived by the fact that such co-operation requires the mediation of an operator.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

2. PATENTS (§ 36*)—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.

That a patented device went into immediate and successful use is evidence of invention, as is also the fact that a new combination of old elements in an apparatus greatly increased its efficiency.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. § 36.*]

3. PATENTS (§ 178*)—CONSTRUCTION—DESCRIPTION OF PREFERRED FORM OF DEVICE.

Where a claim of a patent contains a description of only one form of a thing which would perform the same office in other forms, the court will apply the general rule that the description covers all equivalent forms, and the form described will be treated only as the one preferred.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. § 178.*]

4. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WATER GAS APPARATUS.

The Rusby patent No. 857,760, for a water gas apparatus, held not anticipated, valid, and infringed.

———

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PATENTS (§ 328*)—INVENTION—WATER GAS APPARATUS.

   The Dickey patent No. 940,925 for a water gas apparatus *held* void for lack of invention.

In Equity. Suit by the United Gas Improvement Company against the Gas Machinery Company. On final hearing. Decree for complainant in part.

F. C. Friend, of Cleveland, Ohio, and Augustus B. Stoughton, of Philadelphia, Pa., for plaintiff.

Smith, Taft & Arter and Thurston & Kwis, all of Cleveland, Ohio, for defendant.

DAY, District Judge. This is a suit in which the defendant is charged with infringing the Rusby patent No. 857,760, and the Dickey patent No. 940,925, both of which purport to be for improvements in water gas apparatus.

The Rusby patent contains but one claim, which is:

"Means for definitely controlling the quantity and quality of the production of gas, which means comprise the gas generating apparatus and its regulatable air supply connections and an ajutage interposed in said connections and provided with a pressure gauge, whereby the attendant is enabled to introduce a definite volume of air during the interval of each blow regardless of fire and other conditions in the apparatus, substantially as described."

The only claim of the Dickey patent which it is claimed is infringed is the first claim, which is:

"Means for definitely controlling the quantity and quality of the production of gas which means comprise the gas generating apparatus and its regulatable steam connection and a meter tube interposed in said connection and provided with a gauge whereby the attendant is enabled to introduce a definite volume of steam during the interval of each run, substantially as described."

Water gas apparatus consists essentially of a generator, a carburetor, a superheater appropriately interconnected and provided with oil, steam, and air connections.

In the process of manufacture of water gas it is essential that at stated periods definite volumes of air and steam should be introduced into the apparatus. I think it appears from the record that, following the suggestions of Rusby the improvement made in the art by him was immediately and extensively accepted by those engaged in gas manufacture, and that useful results were accomplished in securing a more uniform quality of gas, an increased gas production from a given apparatus, a saving in fuel and in oil and in repairs, and also in labor and supervision.

The elements of the claim of the Rusby patent are: (1) A gas generating apparatus; (2) a regulatable air supply; (3) an ajutage (sometimes designated a "Venturi" tube; (4) a pressure gauge. This ajutage is a pipe containing different areas, one more contracted than the other, and it affords means for indicating the volume of air per unit of time, passing through it, by reason of the different pressures which at the same time exist within, respectively, its most contracted

---

area and its larger area on each side of the throat, and since this indication is continuous, it enables the attendant to know the volume of air passing to the apparatus by computations for a given unit of time.

There is no difficulty in associating these mechanisms when one has conceived the desirability of making the association. It is claimed that the use of these elements was not invention, because it was such an association as enabled an operator to intelligently open the old air valve of the old water gas apparatus so as to bring about a predetermined rate of flow of air, and to close the same when by observing a clock, he saw that the time had elapsed which was required for the introduction, at the indicated rate of flow, of that volume of air which was known to be required. The operating purpose of the use of these several elements in combination is to enable the operator to introduce a definite volume of air during the interval of each blow, used in connection with gas manufacture, regardless of fire and other conditions. If the ajutage were eliminated the gauge would simply indicate air pressure. The ajutage in connection with the gauge causes the gauge to indicate the rate of flow of air per unit of time. In operating the apparatus it is necessary for the operator to observe the pressure gauge and simultaneously operate the hand valve in order to supply the air, and necessarily, in order that gas may be made, the gas generating element must be added to these other elements.

The claim of the patent is for introducing into the generator in a given time, measured by the interval of the so-called "blow" that takes place in the generator, that measured volume of air. The idea is to get into the generator during that short time, which is limited by the interval of the blow, a definite quantity of air, and, so far as doing this is concerned, it does not make any difference how the air is measured, or whether it was measured by old or new means. There never was any trouble in measuring air; it was difficult to get a definite volume of air into a gas generator in the time that was fixed and limited by the duration of the interval of the blow, which had been predetermined by the operator.

[1, 2] The gas industry demanded apparatus containing the combination of the patent in suit, and the invention in question met with immediate and successful use. By the direct use of the gas-generating apparatus the regulatable air supply, the ajutage and the pressure gauge each of these elements coacted with the other in a new organization, producing a more beneficial result than by their old or separate operation. It was true that the co-operation of these elements required the mediation of the operator, but this does not destroy the novelty. Each element performs only its peculiar function, but all together co-operate with respect to the ultimate work to be accomplished. This joint action is more than aggregation, and amounts to invention. Houser v. Starr, 203 Fed. 265, 121 C. C. A. 462; Western Electric Co. v. North, 135 Fed. 79, 67 C. C. A. 553; Krell v. Story, 207 Fed. 947, 125 C. C. A. 394; Hopkins on Patents, vol. 1, p. 431; Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034; Continental Paper Bag Co. v. Eastern Paper Bag Co., 205 U. S. 542, 27 Sup. Ct. 789, 51 L. Ed. 922. The fact that the patented device met

with immediate and successful use is evidence of invention. Electric Co. v. Westinghouse, 171 Fed. 83, 96 C. C. A. 187. Also the new combination of the old elements which produced a new and beneficial result greatly increasing the efficiency of the apparatus is evidence of invention. National Tube Co. v. Aiken, 163 Fed. 254, 91 C. C. A. 114. Likewise marked superiority in safety and economy is evidence of invention. Morgan Engineering Co. v. Alliance, 176 Fed. 100, 100 C. C. A. 30.

It is urged that the Dickey patent, in so far as the first claim is involved, is invalid on precisely the same grounds as have been urged in connection with the Rusby patent. It is also contended that the Dickey patent is invalid for want of novelty, and it is claimed that the defendant installed a water gas apparatus in Macon, Ga., in 1903, containing a steam-metering device which is the full equipment of the Dickey contrivance.

It is urged that Dickey was the first one to connect with a steam line of an old gas apparatus, a particularly cheap and serviceable steam metering device, namely a meter tube and its indicating gauge. It is contended that this was a valuable contribution to the art because it was well known that the old gas-making apparatus would operate most efficiently if there were introduced into it at each run a definite predeterminable volume of steam, and that the Dickey device afforded means by which the operator could know the rate per unit of time at which steam was flowing into the generator, and therefore could intelligently open and close the steam valve.

The meter tube and gauge indicate the rate per unit of time at which the steam is flowing into the generator, and the operator by the indications on the gauge, by a necessary watch or clock, could terminate the run when the predetermined volume of steam had been admitted to the apparatus.

The defendant's water gas apparatus installed at Macon, Ga., in 1903, contained a short stretch of pipe in which was a regulating cock. However, the defendant never did calibrate the cock, and therefore did not take advantage of measuring the amount of steam admitted to the apparatus.

The published proceedings of the Western Gas Association for their twenty-second annual meeting, held at Milwaukee in 1899, at page 293 of the proceedings, indicate that Mr. C. C. Hartpence of the New Amsterdam (New York) Gas Company, had conceived at that time a device for measuring the steam pressure before it entered the gas generator. Also the published proceedings of the American Gas Light Association of their thirty-first annual meeting, held at Detroit, Mich., in 1903, at page 69 and 70, in an article written by W. Cullen Morris, of Long Island City, N. Y., a method of measuring the steam supply before it enters the generator is also indicated. In view of the prior art it does not appear to me what Dickey did could be designated as invention.

In reference to the regulation of the air supply, the defendant's structure performs the same work in practically the same way as is called for by the Rusby patent. The defendant sells its structure, and

plans to regulate the air supply to meet the demand for the Rusby structure. The flange inserted in the defendant's structure, which joins the air pipe of the apparatus, can be termed an ajutage; and the flange inserted with the Pitot tube performs substantially the same office as the Venturi tube of the Rusby patent.

[3] Where a claim of a patent contains a description of only one form of a thing which would perform the same office in other forms, the court will apply the general rule that the description covers all equivalent forms and the form described will be treated only as the one preferred. Vrooman v. Penhollow, 170 Fed. 296, 102 C. C. A. 484.

[4, 5] I am accordingly of the opinion that the Rusby patent is valid and infringed, and that the Dickey patent is invalid.

An order may be drawn accordingly.