## OHIO VARNISH CO. v. GLIDDEN VARNISH CO.

### (Circuit Court of Appeals, Sixth Circuit. July 25, 1914.)

### No. 2458.

PATENTS (§ 328*)—INVENTION—WOOD GRAINING.

> The Clapp patents, No. 839,363, for a process of wood graining, and No. 909,847, for a graining compound used in such process, which is of a constant color, the ultimate color of the finished work being obtained by the application over the compound of different colored varnishes, if not strictly anticipated, do not disclose patentable invention, in view of the prior art, and are invalid.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Wm. L. Day, Judge.

Suit in equity by the Ohio Varnish Company against the Glidden Varnish Company. Decree for defendant (211 Fed. 676), and complainant appeals. Affirmed.

Albert H. Bates, of Cleveland, Ohio, and Robert H. Parkinson, of Chicago, Ill., for appellant.

James R. Offield and Charles K. Offield, both of Chicago, Ill., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. This suit was brought by the Ohio Varnish Company against the Glidden Varnish Company, for the infringement of patent No. 839,363, issued December 25, 1906, upon the application of F. M. Clapp, for a process of wood graining, and upon patent No. 909,847, issued January 12, 1909, upon a divisional application by F. M. Clapp, in connection with the process patent and for the graining compound used in the process. The nature of the claims sufficiently appears by claim 3 of the process patent and by claim 2 of the product patent, which are as follows:

> "3. The process of producing surfaces in imitation of different grained woods, consisting in applying a graining compound constant for various woods and applying over this a varnish having a color selected according to the wood to be imitated.
> "2. The composition of matter already mixed for graining consisting of substantially equal parts of raw sienna and whiting ground in water to make a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thin paste and thinned with alcohol in colorless form to make the proper consistency."

The process of "graining" a wooden surface so as to imitate the natural grain of the wood, and as practiced for many years, consisted, usually, of three steps: First. The wood was painted the color approximating the desired general tone of the finished article; this step, however, might sometimes be omitted. Second. Upon this painted surface was applied an adhesive, plastic mixture called the graining compound. This was composed of an absorptive body, like whiting, pigment to give color, and an evaporating vehicle, like alcohol, or liquids containing alcohol. This compound was then "wiped" and "combed" to imitate the grain of the wood. Third, the surface so created was varnished. Among the defenses urged against both patents is complete anticipation by common use of both process and product by professional grainers the country over; and, obviously, the inquiry into this defense involves the narrower question whether, if Clapp did accomplish anything that was not wholly anticipated, there was any invention in what he did.

It is not clear that merely using the well-known colored varnishes upon a noncolored base, instead of coloring the base and using a clear varnish, was, when done for the first time, more than the skill of a competent workman; but, however that may be, it is clear enough that any inventive merit in Clapp's process must be found in his use of a colored varnish upon a colorless or "constant color" graining compound. Nothing else is seriously claimed to be new.

If there is any novelty in the product patent beyond the thoughts expressed by "already mixed" and by "colorless," it consisted in grinding the materials in water instead of in oil,—a method long common when a "water color" or "distemper color" was desired. In accomplishing wood color imitation, it doubtless had been the usual practice for the grainer, mixing his graining compound, as he did, at the time of use, to put in, according to his judgment, pigments best suitable to reproduce the desired wood colors, and then to cover this with a transparent, colorless varnish. This selection and mixing of colors required professional skill. Clapp claims to have discovered that the same or similar results could be had by carrying the color in the varnish only and making the graining compound either "colorless" or, more accurately, "of a constant color." In this way, the graining compound could be sold ready for use, and could be applied by one of no skill in mixing colors. A very large business undoubtedly grew up on the basis of this idea. People were taught that they could do their own graining work, and a graining set put out by the Ohio Varnish Company, consisting of a can of the compound, brushes and combs, and a can of varnish of selected color, was sold in immense quantities.

Defendant produced 12 witnesses from different parts of the country, all life-long grainers, some of them rather ordinary workmen and some of large experience and skill, who testified regarding the supposed anticipation. Several of them testified to using practically the exact process and product from 5 to 25 years before Clapp's application. Complainant attacks the credibility of two or three of these witnesses,

and points out that each of the others is not corroborated. We do not find it necessary to decide whether a case of anticipation is made out under the strict rules of proof which properly prevail on that subject. We think it does appear, and beyond a reasonable doubt, that it was a well-known expedient in the graining art, and one not uncommonly used, to employ a graining compound of a "constant color" for several different desired color results, and then to get the selected color or shade of color by using a colored varnish; colored varnishes being thoroughly common. For example, the same, graining compound— that is, one of the lightest shade in the series—was used as a basis for imitating oak or ash or chestnut or woods of a similar tone, and then the desired finish, ranging from very light to very dark, was obtained by putting more or less umber or other darkening color in the varnish. So, also, different shades or varieties of mahogany were imitated by using a very light red graining compound, whereupon varying the color of the varnish would produce a light or medium or dark mahogany. In either of these cases, we have a measurably "constant color" for the graining compound and, used in connection therewith, a colored varnish for varying the ultimate color. There is as much difference in general appearance between a light and a dark mahogany or a light and a dark oak as between many other woods of different names; and we see no inventive novelty in the thought that this well-known method could be applied to producing different colored woods of different names as well as different colored woods of the same name. We regard what Clapp did, giving him the benefit of every doubt, as that advance in degree which is not patentable (Ansonia v. Electrical Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327; Bullock v. General Co. [C. C. A. 6] 149 Fed. 409, 419, 79 C. C. A. 229; Macomber, §§ 599, 654), rather than as that distinct step forward which, though short, involves invention (Diamond Co. v. Consolidated Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527; Morgan Co. v. Alliance Co. [C. C. A. 6] 176 Fed. 100, 109, 100 C. C. A. 30).

The large commercial acceptance of the patented product and the corresponding practice of the process are strongly urged as demonstrating that invention was present. We think these results are properly to be credited rather to the fact that Clapp either created or met, or both, a popular demand for something "ready to use." It is quite obvious, however, that invention cannot be found in providing, mixed and ready for use, a painting or similar material which is the same thing that skilled workmen had been accustomed to prepare as they used it.

Our conclusion on this point makes it unnecessary to consider other phases of the case.

The decree below is affirmed, with costs.